## LOCKHART *v.* JOHNSON.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 147. Argued March 22, 1901.—Decided May 13, 1901.

Public lands belonging to the United States, for whose sale or other disposition Congress has made provision by general laws, are to be regarded as legally open for entry and sale under such laws, unless some particular lands have been withdrawn from sale by Congressional authority, or by an executive withdrawal under such authority, either express or implied.

Under the act establishing the Court of Private Land Claims, public lands belonging to the United States, though within the claimed limits of a Mexican grant, became open to entry and sale.

If the provisions of the laws of New Mexico, in force when this location was made, were not complied with, and another location is made before such work was done, the new location is a valid location.

In the courts of the United States in action of ejectment the strict legal title must prevail; and if the plaintiff have only equities, they must be presented on the equity side of the court.

Although the plaintiff has no right to maintain this action, he ought not to be embarrassed by a judgment here from pursuing any other remedy against the defendants, or either of them that he may be advised.

THIS was an action of ejectment brought by plaintiff in error to recover certain mining property in the Territory of New Mexico. The declaration alleges that the plaintiff, on July 10, 1893, was entitled to the possession of a certain mine, or deposit of mineral-bearing rock in place, situated in the Cochiti mining district, in the county of Bernalillo and Territory of New Mexico, and that while so in possession the defendants, on October 1, 1893, entered into and upon the premises and have ever since withheld the possession of the same from the plaintiff to his damage. All the defendants pleaded not guilty, while Pilkey added a further plea that he was not at the time of the commencement of the action in the possession of the premises or any part thereof. The plaintiff demurred to this second plea, and after argument the demurrer was overruled. The parties went to trial upon these pleadings, and after the

testimony had been taken the jury, under the instructions of the court, found a verdict for the defendants. The plaintiff appealed from the judgment entered upon the verdict to the Supreme Court of the Territory, where it was affirmed, and he thereupon sued out a writ of error from this court.

For the purpose of the trial the parties entered into the following stipulation :

" It is stipulated and agreed by and between the plaintiff and defendants in the above-entitled cause that the premises in controversy in this case are situated within the limits of private land claim reported as number 135 in the office of the surveyor general of the Territory of New Mexico, known as the Canada de Cochiti tract, as said claim was surveyed by the surveyor general, said survey having been made and approved by Clarence Pullen, surveyor general, on the date of June 29, A. D. 1885.

" It is further stipulated that said private land claim was never confirmed upon report of the surveyor general, but two petitions for the confirmation of the same were filed in the Court of Private Land Claims, one by Joel Parker Whitney, José Juan Lucero, Laurino Lucero, Juan Cristoval Lucero, José de Jesus Lucero, Juan Toedora Lucero, José Telesforo Lucero, Bernard S. Rodey, and Hannah Harris, being numbered 205 of the docket of the Court of Private Land Claims at Santa Fé, and filed March 2, 1893 ; and the other petition being filed by Manuel Hurtado and José Antonio Gallego on the 3d day of March, 1893, and that said petitions were consolidated in said cases heard, and decree of confirmation rendered by said court on the 29th day of September, A. D. 1894, a compared copy of which decree is attached to this stipulation.

" It is further stipulated and agreed that the said premises in controversy in this case are not included within the boundaries of said grant as confirmed by said decree.

" It is further stipulated and agreed that an appeal was taken from said decree by all of the said petitioners to the Supreme Court of the United States, in which court said cause is now pending upon said appeal and undetermined, said appeal being dated the 11th day of March, A. D. 1895.

" It is further stipulated and agreed that the official printed

copies of the reports of the surveyor-general to Congress upon said private land claim and all documents attached thereto may be used upon the trial of this cause to the same effect as if they were the original documents and archives on file in the surveyor general's office, subject, however, to such objection as the parties may make upon other grounds."

The plaintiff also showed upon the trial that he and one Benjamin Johnson and the defendant Charles Pilkey on or about May 7, 1893, entered into an agreement at Albuquerque, New Mexico, by which they agreed to form a partnership for the purpose of discovering, locating and operating mining claims, Pilkey agreeing to prospect and locate such veins and lodes and places as he might discover, containing valuable ores or minerals, in the name and for the joint benefit of all the parties to the agreement, in the proportion of one third interest to himself and an undivided two thirds interest to the others. They were to furnish him with tools, etc., and to pay him for some portion of his labor upon the mines which he might discover. In pursuance of this agreement Pilkey started out and among others discovered, took possession of and assumed to locate the mine in question. It is claimed on the part of the plaintiff that Pilkey, after taking possession of and locating the mine, remained there from July 10, 1893, until some time in October of that year, when in connection with several other persons he entered into a conspiracy against his partners and pursuant thereto ceased to do any work on the mine and permitted other persons (defendants herein) to take possession of it and make a relocation thereof, and that they have retained possession ever since.

Evidence was offered at the trial for the purpose of showing these last stated facts, which, under the objection of the defendants, was ruled out and exceptions duly taken.

The defendants contended that the land in controversy was at all times subject to the mining laws of the United States, and that plaintiff did not comply with the provisions thereof or of the laws of New Mexico applicable thereto, and that whatever right or title he ever had in the lands had expired and be-

come forfeited before the defendants took possession of the land and long before the commencement of this action.

*Mr. J. H. McGowan* for plaintiff in error.

*Mr. William B. Childers* for defendants in error.

Mr. Justice Peckham, after making the above statement of facts, delivered the opinion of the court.

The first question to be determined in this case is one which arises out of the facts set forth in the stipulation between the parties, and that is, Did the lands which the plaintiff claims to recover belong at the time of the location in 1893 to the United States within the meaning of section 2319, Revised Statutes, which provides that " all valuable mineral deposits in land belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States," etc. ?

At the time of the location the record shows the parties believed the land was government land and not within the limits of any Mexican grant. The stipulation shows, however, that the lands were in fact within the limits of the private land claim known as the Canada de Cochiti grant; that the grant was never confirmed by Congress upon the report of the surveyor general, and that two different sets of claimants under the grant had filed their petitions in the Court of Private Land Claims at Santa Fé, one on the 2d and the other on the 3d day of March, 1893 ; that there was a decree of confirmation rendered by the court on September 29, 1894, and in that decree of confirmation the lands were not included within the boundaries of the grant as confirmed by that decree. An appeal was taken therefrom by all the parties to the Supreme Court of the United States, where it was pending at the time the stipulation was entered into, the appeal being dated March 11, 1895.

It therefore appears that at the time of the discovery and location of the lode in July, 1893, the Cochiti grant was before the

Court of Private Land Claims for adjudication, and the question is whether by reason of that fact these lands were reserved from entry and were not subject to the mineral laws of the United States at that time. It will be noticed that before the trial of this case the validity and extent of the Cochiti grant had been decided by the Court of Private Land Claims, and this land was thereby excluded from the limits of that grant. We know by our own records that the decree of the Court of Private Land Claims was affirmed in this court, in substance, in *Whitney* v. *United States*, decided in May, 1897. 167 U. S. 529. The contention on the part of the plaintiff in error is that while the Cochiti claim was before the Court of Private Land Claims, and thereafter until its final determination by this court, no land within its claimed limits could be entered upon under the mining laws of the United States, and if any such entry were in fact made it was illegal and void, and gave no rights under the mining laws to the parties so entering, and consequently plaintiff's possession was not subject to forfeiture under those laws. In other words, that while the claim was *sub judice* all lands within its limits as claimed were withdrawn and reserved from entry under any of the laws pertaining to the sale or other disposition of the public lands of the United States, and that the plaintiff, being in possession, had the right to retain it as against defendants who entered without right or title, and were therefore mere trespassers.

Public lands belonging to the United States, for whose sale or other disposition Congress has made provision by its general laws, are to be regarded as legally open for entry and sale under such laws, unless some particular lands have been withdrawn from sale by Congressional authority or by an executive withdrawal under such authority, either expressed or implied. *Wolsey* v. *Chapman*, 101 U. S. 755, 769; *Hewitt* v. *Schultz*, 180 U. S. 139. We must, therefore, refer to the action of Congress to discover whether lands which in fact were public lands of the United States were reserved from sale or other disposition under its public laws because they were included within the claimed limits but in fact were not within the actual limits of a grant by the Spanish or Mexican authorities before the cession of the

territory by Mexico to the United States by the treaty of Guadalupe Hidalgo of February 2, 1848; 9 Stat. 922. The eighth and ninth articles of that treaty provide that the property of every kind belonging to Mexicans in the ceded territory should be respected by the government of the United States and their title recognized.

By the act of July 22, 1854, c. 103, 10 Stat. 308, Congress established the office of surveyor general of the Territory of New Mexico, and in the eighth section of that statute it was made the duty of that officer, under instructions from the Secretary of the Interior, to ascertain the origin, nature, character and extent of all claims to lands under the laws, usages and customs of Spain and Mexico. He was to make a full report of all such claims as originated before the cession of the territory to the United States by the treaty above mentioned, with his decision as to the validity or invalidity of each. This report was to be laid before Congress for such action thereon as it might deem just and proper, "and, until the final action of Congress on such claims, all lands covered thereby shall be reserved from sale or other disposal by the government, and shall not be subject to the donations granted by the previous provisions of this act."

The Cochiti grant came before the surveyor general pursuant to the provisions of the act of 1854, and therefore by the terms of that portion of section eight, just quoted, the lands were reserved from sale or other disposal by the government until final action by Congress thereon. Up to March 3, 1891, Congress had taken no action in regard to this grant and on that day it passed the act establishing the Court of Private Land Claims, 26 Stat. 854, c. 539; and by its fifteenth section Congress in terms repealed the eighth section of the act of 1854, "and all acts amendatory or in extension thereof, or supplementary thereto, and all acts or parts of acts inconsistent with the provisions of this act." By this repeal, lands which were in fact public lands belonging to the United States, although within the claimed limits of a Mexican grant, became open to entry and sale under the laws of the United States, unless, as is the contention of plaintiff, such lands were reserved from

entry and sale or other disposition by the United States, by reason of the provisions of the treaty with Mexico. We see nothing in the terms of that treaty, either in the eighth or ninth article, that could be construed as a withdrawal of lands which in fact were the public lands. of the United States, although contained within the claimed limits of some Mexican grant made prior to the cession to the United States. The mere fact that lands were claimed under a Mexican grant, when such grant did not in truth cover them, would not by virtue of any language used in the treaty operate to reserve such lands from entry and sale.

We are aware that the land department has in some cases taken a different view of this subject. In the *Tumacacori* and *Calabazas grant*, 16 L. D. 408, 423, the Secretary held that the act of 1891, creating the court of Private Land Claims, did not by its fifteenth section, " either by expression or necessary implication, revoke or annul the statutory reservations in force at the time of its passage."

And in the *Joseph Farr claim*, 24 L. D. 1, the Secretary held that by the terms of the treaties between the United States and the Republic of Mexico all lands embraced within the Mexican and Spanish grants were placed in a state of reservation for the ascertainment of the rights claimed under said grants, and that the act of March 3, 1891, continued that reservation in force, and that it would remain so until final action is taken on the respective claims or grants affected thereby.

We cannot agree with these decisions. In the last case the Secretary held, in opposition to the views expressed by his predecessor in the earlier case, that the lands were not reserved by virtue of the statutory reservation under the act of 1854, because that section was repealed by the fifteenth section of the act of 1891 without any qualification, and the repeal went to the entire section; but he held that, " Whatever may have been the purpose of Congress in making said reservation, it is clear that all lands embraced within the claimed limits of grants made by Mexico or Spain prior to said treaty were in a state of reservation under the terms of the treaty itself, independent of any reservation that might be made after such treaty was duly rati-

fied. It follows that the repeal of the section of the statute containing the reservation would not have the effect of releasing lands reserved under treaty obligations from such reservation."

As we have already stated, there are no words in the treaty with Mexico expressly withdrawing from sale all lands within the claimed limits of a Mexican grant, and we do not think there is any language in the treaty which implies a reservation of that kind. Whatever reservation there is must be looked for in the statutes of the United States, and we are of opinion that there is no such reservation and has been none since the repeal of the eighth section of the act of 1854.

In *Stoddard* v. *Chambers*, 2 How. 284, the action was ejectment for lands in Missouri, the defendant claimed title under a New Madrid certificate permitting location upon the public lands which had been authorized to be sold under an act of Congress, approved February 15, 1811, by which the President was authorized to sell public lands in the Territory of Louisiana, with a proviso that "till after the decision of Congress thereon no tract shall be offered for sale the claim to which has been in due time, and according to law, presented to the recorder of land titles in the district of Louisiana, and filed in his office, for the purpose of being investigated by the commissioners appointed for ascertaining the rights of persons claiming lands in the Territory of Louisiana."

From the time of the passage of that act up to May 26, 1829, it was not questioned that all lands claimed under French or Spanish title were reserved from sale by acts of Congress. On May 26, 1829, this reservation ceased until it was revived by the act of July 9, 1832, and was continued from that time until the act of 1836. The defendant's patent was issued on July 16, 1832—after the time when the reservation was revived by the act of July 9, 1832. In speaking of the location under his New Madrid certificate by the defendant, the court said (at p. 318): "His location was made on lands not liable to be thus appropriated, but expressly reserved; and this was the case when his patent was issued. Had the entry been made, or the patent issued, after the 26th of May, 1829, when the reservation ceased, and before it was revived by the act of 1832, the title

of the defendant could not be contested. But at no other interval of time, from the location of Bell, until its confirmation in 1836, was the land claimed by him liable to be appropriated in satisfaction of a New Madrid certificate."

So in that case it appears that unless there were a reservation of the land by Congressional action, it was not reserved in any other way, and that during the interval of three years, when the reservation by the act of Congress was not in operation, an entry made during that time would have been valid, and the title of the defendant thereunder could not have been contested.

Mineral lands are not supposed to have been granted under ordinary Mexican grants of lands, and the act of 1891 provides that minerals do not pass by such grants, unless the grant claimed to effect the donation or sale of such mines or minerals to the grantee, or unless such grantee became otherwise entitled thereto in law or in equity; the mines and minerals remaining the property of the United States, with the right of working the same, but no mine was to be worked or any property confirmed under the act of 1891 without the consent of the owner of such property, until specially authorized thereto by an act of Congress thereafter to be passed. (Section 13, subdivision third, act of 1891.) This provision makes it still plainer that, so far as regards mineral lands, there was no intention after the passage of the act of 1891 that they should be reserved by a mere claim in a Mexican grant of ordinary land.

Nor does the claim that the Cochiti grant was *sub judice* at the time of the location of these lands affect their status as public lands belonging to the United States. They were not, in fact, within the limits of the grant.

The case of *Astiazaran* v. *Santa Rita Land & Mining Company*, 148 U. S. 80, is not in point. In that case it was held that a private claim to land in Arizona, under a Mexican grant which had been reported to Congress by the surveyor general of the territory, could not, before Congress had acted on the report, be contested in the courts of justices. It was stated (p. 83) that, "The case is one of those, jurisdiction of which has been committed to a particular tribunal, and which cannot, therefore— at least, while proceedings are pending before that tribunal—be

taken up and decided by any other." The court further said that Congress having constituted itself the tribunal to finally determine upon the report and recommendation of the surveyor general whether the claim was valid or invalid, the proceedings were pending until Congress acted, and while they were pending the question of the title of the petitioner could not be contested in the ordinary courts of justice. This is no such case. There was no contest in any other court by which the validity or extent of the grant pending for decision in the Court of Private Land Claims could in any way be affected. No court of justice had been appealed to for any such purpose. The question was simply whether the land was public land open to entry under the laws of the United States, and this was a question which parties might decide at the peril of having their acts rendered of no avail if the decision of the Court of Private Land Claims included those lands in the grant then before it.

Nor does the case of *Newhall* v. *Sanger*, 92 U. S. 761, apply. In that case it was held that lands within the boundaries of an alleged Mexican or Spanish grant which was *sub judice* at the time the Secretary of the Interior ordered a withdrawal of lands along the route of the railroad, were not embraced in the Congressional grant to the company. The decision went upon the ground that the legislation of Congress had been so shaped that no title could be initiated under the laws of the United States to lands covered by a Spanish or Mexican claim until it was barred by lapse of time or rejected. The act of March 3, 1851, 9 Stat. 631, 633, sec. 13, which provides for the presentation of claims under Mexican grants in California to the commission established by the act, was referred to by the court, and it was held that by reason of its provisions the lands were not public lands under the laws of the United States until the claims thereto had been either barred by lapse of time or rejected. The sixth section of the act of 1853, March 3, 10 Stat. 244, 246, was also referred to as expressly excepting all lands claimed under any foreign grant or title. There was no such legislation existing in regard to New Mexico at the time of the location of this mining claim, July, 1893. The lands were in fact and have been since their cession to this country public lands of the

United States, although during the period between the passage of the act of 1854 and that of 1891 they were not open for sale or other disposition while the claims to such lands were undetermined.

Being public land and since 1891 open to location under the mining laws of the United States, it is further contended on the part of defendants that the location of the claim made by Pilkey on July 10, 1893, in behalf of himself and his two partners, Lockhart the plaintiff herein and Johnson, became forfeited by reason of noncompliance with the mining statutes of the United States and also the Territory of New Mexico, and that while such failure to comply with the statutes continued, peaceable possession of the land was taken and a relocation made by the defendants, and whatever rights the plaintiff ever had under the first location were thereby cut off.

The laws of New Mexico in force at the time when this location was made provide that a person desiring to locate a mining claim must distinctly mark the location on the ground so that its boundaries may be readily traced, and must post in some conspicuous place on the ground a notice in writing stating the names of the locators, their intention to locate the claim, giving a description thereof by reference to some natural object or permanent monument so as to identify it, and must also within three months after such posting cause a copy of the notice to be recorded in the office of the recorder of the county in which the notice is posted. The locator must also within ninety days from the date of taking possession of the claim sink a discovery shaft upon the claim to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, exposing mineral in place, or he shall drive a tunnel, adit or open cut upon such claim at least ten feet below the surface exposing mineral in place. By the provisions of the act of 1889 the surface boundaries of all mining claims located must also be marked by four substantial posts, or four substantial monuments of stone set at each corner of the claim, and which posts or monuments must be plainly marked so as to indicate the direction of the claim from each monument or post. Sec. 2286, Compiled Laws of N. M. 1897; secs. 1 and 2, chap. 25, Laws N. M. 1889.

There is no pretence in the evidence that these things were done other than the posting of a notice upon a pile of rocks at some point within the claim. No work was done, no monuments or posts set, no discovery shaft sunk, nor any tunnel, adit or open cut driven, as provided by law. It also appears that some time about the last of September or the early part of October, 1893, Pilkey, who was the only one of the partners who went to the land and stayed near it at any time, left the neighborhood with his wife and came to Albuquerque and remained there until November, 1893, and that while he was absent and no one in possession of the land, and on or about October 23, 1893, four of the original defendants, Fagaly, Walker, Leeds and Johnson, located this claim and peaceably entered upon and took possession of it.

If the statutes are not complied with by doing the work as therein provided, and another locates before such work is done, it is a valid location. *Faxon* v. *Barnard,* 4 Fed. Rep. 702; *Belk* v. *Meagher,* 104 U. S. 279, 282.

It is undisputed that the requisite amount of work was not done by the first locator, nor is there any dispute that he left the mine, certainly early in October, 1893, and that there was no one in possession of the land on the 23d of October, 1893, when the above-named defendants entered upon the land, peaceably took possession thereof and made their location, and that in such location Pilkey did not join, and his name was absent from the notice, and he was not present when possession was taken by the other defendants.

These undisputed facts are shown by the record, and upon such evidence the court directed a verdict for the defendants. The Supreme Court of the Territory has affirmed the judgment entered upon this verdict, on the ground that the land was public land of the United States and open to location under the mineral laws thereof; that the failure of the original locator to comply with the terms of the statutes of the United States and of New Mexico by doing the work therein prescribed forfeited all his rights under such location, and the peaceable location and possession by others while such failure continued were valid, and the plaintiff therefore showed no legal title to the mine, and con-

sequently could not recover in this action.    Upon the facts thus stated we think the Supreme Court was right.

In the course of the trial, however, while the cause was with the plaintiff, he offered to show certain other and further facts which he claimed entitled him to recover the lands as against all the defendants. The defendants objected to the evidence so offered on the ground that it was inadmissible and immaterial in this action, and the objection was sustained and the plaintiff duly excepted.

The facts which the plaintiff sought to prove are briefly these: After Pilkey and the plaintiff and Johnson had entered into their agreement, and while Pilkey was, pursuant to its provisions, engaged in prospecting, he discovered the mine in question and located it in the name of himself and his partners, and thereafter and before the expiration of the ninety days in which to do the necessary work on the claim he and the other defendants conspired together, and agreed that he should do no work on the mine within the statutory time, and after the expiration of that time and a forfeiture had been incurred by a failure to comply with the statutes the other parties defendant should relocate the mine, comply with the laws in regard to doing the work upon it and thereby obtain the ownership thereof, and that pursuant to such conspiracy he did neglect to do the necessary work within the statutory time, the defendants relocated the mine, entered into the possession thereof and did the necessary work thereon and have remained in possession ever since. The plaintiff, therefore, claims that Pilkey, being one of the conspirators with the other defendants and also a copartner of plaintiff, could not be a party to a hostile relocation of the mine, and that any such relocation by others, under an agreement with him, was illegal, and gave no right or title to defendants, and that the prior possession of plaintiff, through his copartner, continued in law, and, as against the defendants, such possession gave plaintiff a good title, they being on account of their fraud mere trespassers upon the land.

Much of the testimony thus given is denied on the part of Pilkey, but as all of it was rejected by the court we must assume its truth for the purpose of determining the case.

It is clear that the statutes providing for a location of mining lands were not complied with by Lockhart or his partners. There is no dispute on that subject. When peaceable possession of the mine which Pilkey had abandoned was taken and the relocation was made by the defendants Fagaly, Walker, Leeds and Johnson, and in their own names, whatever legal title to the mine the plaintiff Lockhart had by virtue of the prior location by defendant Pilkey was cut off. The plaintiff has now brought this purely legal action of ejectment, and must recover upon the strength of his legal title, or not at all. It is undisputed that whatever possession Pilkey had ever taken of the land in question had been in fact abandoned by him as early as the first of October, 1893. Lockhart had never had any other than constructive possession of the land based upon the alleged actual possession of his copartner, and when the latter abandoned such actual possession, left the mine and came to Albuquerque, the constructive possession of plaintiff ceased at the same moment. When the four defendants who took possession of and relocated the mine went on the land on October 23, 1893, they found it vacant, and when they took peaceable possession of the vacant land before any resumption of work upon the claim by plaintiff or in his behalf, the latter's legal title, whatever it had been, ceased. It is not a case, therefore, of a prior possession under color of law or title being sufficient as against an ouster by a mere trespasser. There has been no ouster, but on the contrary a complete abandonment of possession. Whatever may be the equities of the plaintiff, in regard to this land as against the defendants, he has certainly no legal title to the mine or any part thereof, and in this purely legal action he must fail.

In the courts of the United States in an action of ejectment the strict legal title must prevail, and if the plaintiff have only equities they must be presented and considered on the equity side of the court. *Foster* v. *Mora*, 98 U. S. 425, 428; *Johnson* v. *Christian*, 128 U. S. 374, 382. The law of New Mexico is to the same effect. Compiled Laws of N. M. sec. 3160, and following sections.

Whatever the rights of the plaintiff may be, (and as to what

they are we express no opinion,) it is clear that on this record he cannot maintain an action of ejectment. If he have rights as a copartner or cotenant with Pilkey, and he claims that the acts of the latter inure to his benefit in any way, his rights under such circumstances can be enforced in equity. *Turner* v. *Sawyer*, 150 U. S. 578, 586.

In relation to mining, it has been held that the remedy in the case of a claim in the nature of that which the plaintiff herein sets up, is against the copartner or cotenant, by an action for a breach of his contract or to establish and enforce a trust in the claim as relocated against the parties relocating. *Saunders* v. *Mackay*, 5 Montana, 523; *Doherty* v. *Morris*, 11 Colorado, 12.

In this case it will be seen that the relocation on behalf of some of the defendants did not contain Pilkey's name, and hence he never had any legal title under that location. He denies that he had any interest in the mine under the relocation, and asserts that it was not made in his interest or for his benefit. Although the plaintiff has no right to maintain this action, yet he ought not to be embarrassed by a judgment here from pursuing any other remedy against the defendants or either of them that he may be advised; and in order to avoid any complication of that nature which possibly might result from an absolute affirmance of the judgment of the Supreme Court of the Territory, we modify the terms of that judgment by providing that it is entered without prejudice to the enforcement by other remedies, of the rights, if any, which the plaintiff may have against the parties defendant or either of them, and, as so modified, such judgment is

*Affirmed.*