# LANE, SECRETARY OF THE INTERIOR, *v.* WATTS.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 889. Petition for rehearing distributed to Justices October 12, 1914.—Decided November 2, 1914.

Opinion in *Lane* v. *Watts*, 234 U. S. 525, explained and leave to file petition for rehearing denied.-

*Quære,* whether the act of August 4, 1854, incorporating the territory acquired under the Gadsden Treaty with, and making it subject to,

the laws of the Territory of New Mexico, made the provisions of
§ 8 of the act of July 22, 1854, applicable thereto.

Statutory reservations of lands within territory acquired under treaty
which are covered by claims of private parties may be subject to
repeal; and so *held* as to reservations of Mexican lands under § 8
of the act of July 22, 1854. *Lockhart* v. *Johnson*, 181 U. S. 516.
*Quære*, whether the act of June 21, 1860, did not repeal *pro tanto* the
reservation provisions of § 8 of the act of July 22, 1854.

Where the lands involved have not been reserved, but are necessarily
included within one or the other of two grants, they are not public
lands nor subject to disposal by the Land Department.

The question of superior title of contesting claimants to lands within
territory acquired under the Gadsden Treaty cannot be determined
in an action between the Government and one of the claimants and
to which the other claimant is not a party.

THE facts, which are the same as those involved in
*Lane* v. *Watts*, 234 U. S. 525, are stated in the opinion.

*Mr. Assistant Attorney General West* and *Mr. C. Edward
Wright,* for appellants in support of the petition:

The decision leaves open the question of the status of
the conflicting Mexican grants—San Jose, Tumacacori,
and Calabazas—and yet affirms a decree which enjoins
the appellants from further action in respect to the Ohm
homestead entry and other entries which are within the
boundaries of these Mexican grants. The point made by
the appellants was that in no event could the appellees
take the lands embraced by these grants because the same
were reserved and not subject to appropriation at the
time of selection of Baca Float No. 3. If this be so, the
appellants ought not to be enjoined as to entries within
said grants.

The court leaves the point undetermined and says that
it is not now concerned with such question; that if a con-
troversy should arise it will properly be adjudicated in
the courts where the lands are located.

If these lands were reserved under § 8 of the act of
June 22, 1854, 10 Stat. 308, and if the Land Department,

notwithstanding that fact, did acts that culminated in an attempted transfer of the legal title to the heirs of Baca on April 9, 1864—a transfer of title to lands that embraced over 30,000 acres of land reserved by Congress from any form of disposition at that time—then the conveyance, at least so far as these conflicting Mexican claims are involved, was absolutely void. *Burfenning* v. *Railroad,* 163 U. S. 321; *Noble* v. *Union River Logging Co.,* 117 U. S. 165, 173.

The conveyance is absolutely void. Yet if void, under the decision of this court and by operation of the decree which it affirms, the appellants are perpetually enjoined from any action in respect to lands within these conflicting grants on the theory that title passed to the appellants in 1864—i. e., that the Commissioner passed a title that he had no power to pass.

The court may not enjoin the Land Department perpetually without first, at least, deciding that these Mexican claims were not reserved lands in 1863.

The claims as claims *in toto* cannot become the subject of controversy, because this court has already decided that the Tumacacori and Calabazas grants were invalid. *Faxon* v. *United States,* 171 U. S. 204.

Under the opinion of the court, the action of the Commissioner taken on April 9, 1864, when he ordered a survey, operated to pass the title. It is also held that a survey was necessary to segregate the lands from the public domain, but see *Burke* v. *Southern Pacific R. R. Co.,* 234 U. S. 669. In this case there was no definite location until a survey had been made.

In the western country mountains or prominent hills merge into foothills or rolling country. It is a matter purely of individual opinion as to where the "base" of a mountain may be said to be. A hundred different surveyors might have a hundred different ideas as to the location of the "base" as intended in the selection.

The Surveyor-General of Arizona, not the Surveyor-General of New Mexico, was the officer with jurisdiction. The latter had no jurisdiction, and his so-called approval of the selection was without force and effect. No surveyor-general of Arizona had acted in respect to this selection until 1905.

*Mr. G. H. Brevillier, Mr. James W. Vroom* and *Mr. Herbert Noble,* for appellees in opposition to the petition.

MR. JUSTICE McKENNA delivered the opinion of the court.

Leave to file an application for rehearing is asked. We see no reason to grant it, but to avoid misunderstanding of the opinion we may add a few words.

The opinion is explicit as to the main elements of decision. It decides that the title to the lands involved passed to the heirs of Baca by the location of the float and its approval by the officers of the Land Department and order for survey in 1864 in pursuance of the act of June 21, 1860, c. 167, 12 Stat. 71, 72. A survey, it was said, was necessary to segregate the land from the public domain and the condition was satisfied by the Contzen survey. It follows, therefore, that the land was not subject to homestead or other entry under the public land laws, and the asserted jurisdiction of the Land Department over it for that purpose could be restrained.

It is suggested, however, by appellees that appellants urge that certain claimed Mexican grants conflict with the location and that the opinion leaves uncertain the effect of this and that therefore it may encourage or require further litigation. Appellants assert that the effect of the claimed Mexican grants is reserved from decision and yet the Land Department is enjoined from exercising any jurisdiction over the conflicting areas.

A few words of explanation will make certain the extent of our decision. In adjustment of the conflict between the Baca grant and the grant to the town of Las Vegas, the act of 1860 was passed. The quantity and the manner of location were defined. The land was to be located in square bodies and be "vacant land, not mineral, in the Territory of New Mexico," and it was made the duty of the Surveyor-General of New Mexico to survey and locate the lands when selected by the heirs of Baca. There were no other conditions, and these were fulfilled in 1864.

But it is said that portions of the tract as located were then embraced in two claimed Mexican grants, to-wit, the Tumacacori and Calabazas grant and the San Jose de Sonoita grant, and that by virtue of § 8 of the act of July 22, 1854, c. 103, 10 Stat. 308, 309, the lands covered by such claims were reserved from other disposal and therefore from location under the Baca float. That section made it the duty of the Surveyor-General of New Mexico, under such instructions as might be given by the Secretary of the Interior, to ascertain the character and extent of claims to such lands under the laws, usages and customs of Mexico and Spain and to make full report on all such claims as originated before the cession of the Territory to the United States by the Treaty of Guadalupe Hidalgo of 1848, and report the same to Congress for its consideration and action. It was provided that "until the final action of Congress on such claims, all lands covered thereby shall be reserved from sale or other disposal by the government, and shall not be subject to the donations granted by the previous provisions of this act."

Subsequently, by the act of August 4, 1854, the territory acquired under the Gadsden Treaty was incorporated with the Territory of New Mexico and made subject to the laws of that Territory (c. 245, 10 Stat. 575). Assuming, not deciding, that this provision made § 8 applicable to lands acquired under the Gadsden Treaty, the reserva-

tion was statutory and subject to repeal. *Lockhart* v. *Johnson*, 181 U. S. -516. And there are grounds for a contention that the act of 1860 making a grant to the Baca heirs effected a repeal *pro tanto* of the reservation of the act of 1854. But there are answers more direçtly under § 8 of that act. The mere fact of a claimed Mexican grant did not reserve the lands covered by it. *Lockhart* v. *Johnson, supra.* It was only after their presentation to the Surveyor-General of New Mexico for his repprt thereon that the lands were reserved "until the final action of Congress." There was no reservàtion except by this statute and it related only to lands covered by a claim presented to the Surveyor-General. There is no language in the treaties which implies a reservation. *Lockhart* v. *Johnson*, at p. 523.

The Tumacacori and Calabazas grant was not presented to the Surveyor-General until June 9, 1864, and his report was not laid before Congress until May 24, 1880. A peti· tion for confirmation of the San Jose de Sonoita grant was not presented to the Surveyor-General until December, 1879. It will be seen, therefore, that there was no disclosure of these claims until after the selection of the Baca grant and its location by the Land Department, the consummation of which was accomplished by the approval of the location April 9, 1864. Besides, the Tumacacori and Calabazas claim was held untenable and void by this. court (*Faxon* v. *United States*, 171 U. S. 244), and the greater part of the San Jose de Sonoita claim was rejected in *Ely's Administrator* v. *United States*, 171 U. S. 220. And we may say that before the Contzen survey was made § 8 of the act of 1854 had been repealed. *Lockhart* v. *Johnson, supra.*

The contention that the lands covered by these claims were reserved by the act of 1854 being untenable, it results that the only conflict with the Baca float as located April 9, 1864, which requires consideration and decision

is the one arising from that part of the San Jose de Sonoita claim which has been confirmed as against the United States. And in any event the lands in that conflict are not public lands or subject to disposal by the Land Department. They belong either to the owners of the Baca float or to the owners of the confirmed portion of the San Jose de Sonoita grant. But which is the superior claim we cannot now consider or decide because the Sonoita claimants are not parties to this cause and because the question will more properly arise in the local courts and not in a proceeding in the District of Columbia against the Secretary of the Interior.

*With this explanation of our former opinion, leave to file the petition for rehearing is denied.*