## STATE OF MINNESOTA *v.* LANE, SECRETARY OF THE INTERIOR, ET AL.

### IN EQUITY.

No. 20. Original. Motion to dismiss. Argued April 15, 1918.—Decided June 3, 1918.

An act of Congress granted the "undisposed of" lands in certain sections to a State, saving "vested rights" of others existing at its date. Part of the described tracts, here in question, within the indemnity limits of the Northern Pacific, had previously been selected by that railroad and by it sold to purchasers in good faith. After the date of the act, the selections were canceled as being founded on improper bases, but the Land Department, upon fully hearing the State, allowed an application of the purchasers' assignee, made meanwhile, to purchase the lands in question from the United States, and secure patents therefor, under the Adjustment Act of March 3, 1887. *Held*, that the decision was not arbitrary, and that a suit against the Secretary of the Interior and the Commissioner of the General Land Office, brought by the State before the patents issued, to enjoin their issuance and to quiet its title, would not lie. *Lane* v. *Watts*, 234 U. S. 525, distinguished.

Dismissed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful*, for defendants, in support of the motion.

*Mr. Charles R. Pierce*, with whom *Mr. Lyndon A. Smith*, Attorney General of the State of Minnesota, and *Mr. Clifford L. Hilton*, Deputy Attorney General of the State of Minnesota, were on the brief, for complainant, in opposition to the motion.

MR. JUSTICE DAY delivered the opinion of the court.

This bill of complaint is filed by the State of Minnesota to quiet title to certain lands in that State, and to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from issuing patents for the lands to the Immigration Land Company, a corporation of the State of Minnesota. The defendants filed a motion to dismiss the bill upon the following grounds:

"1. The court is without jurisdiction to entertain this suit because it is in substance and effect against the United States, which has not consented to be sued or waived its immunity from suit.

"2. There is a defect of parties defendant which can not be cured without depriving the court of jurisdiction.

"3. The relief prayed for would be an invasion of the lawful jurisdiction of the defendants as officers of the Land Department.

"4. The bill of complaint does not state facts sufficient to entitle the State of Minnesota to any relief."

From the allegations of the bill it appears that the State claims title to the lands under the Act of August 3, 1892, 27 Stat. 347.[1]

---

[1] *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all undisposed lands of

The Immigration Land Company claims title under § 5 of the Act of March 3, 1887, 24 Stat. 556,[1] relat-

the United States situated in the following subdivisions, according to the public surveys thereof, to-wit: Section six of township *one hundred and forty-two;* sections six, seven, eighteen, nineteen, thirty, and thirty-one of township *one hundred and forty-three,* all in *range thirty-five;* sections one, two, three, and four of township *one hundred and forty-two,* and sections one, two, three, four, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, twenty-seven, twenty-eight, thirty-three, thirty-four, thirty-five, and thirty-six, of township *one hundred and forty-three, all in range thirty-six,* situate in the district of lands subject to sale at Saint Cloud and Crookston, Minnesota, is hereby forever granted to the State of Minnesota, to be perpetually used by said State as and for a public State park: *Provided,* That the land hereby granted shall revert to the United States, together with all improvements thereon, if at any time it shall cease to be exclusively used for a public State park; or if the State shall not pass a law or laws to protect the timber thereon.

Sec. 2. That this act shall not in any manner whatsoever interfere with, supersede, suspend, modify, or annul the vested rights of any person, company, or corporation in respect to any of said lands existing at the date of the passage of this act.

[1] That where any said company shall have sold to citizens of the United States, or to any persons who have declared their intention to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary Government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns: *Provided,* That all lands shall be excepted from the provisions of this section which at the date of such sales were in the bona fide occupation of adverse claimants under the pre-emption or homestead laws of the United States, and whose claims and occupation have not since been voluntarily abandoned, as to which excepted lands the said pre-emption and homestead claimants shall be permitted to perfect their proofs and entries and receive patents therefor: *Provided further,* That this section

ing to the adjustment of land grants to railroad companies.

The last-named statute provides that where the railroad company shall have sold to citizens of the United States as a part of its grant, lands not conveyed to or for the use of the company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of the road, and where the lands so sold are for any reason excepted from the operation of the grant, it shall be lawful for a *bona fide* purchaser thereof from said company, to make payment to the United States for the lands at the ordinary government price for like lands, and thereupon patents shall issue to the *bona fide* purchaser, his heirs or assigns.

Under this act, on February 9, 1907, the Land Company made application in the Land Department to purchase the land, claiming to be the assignee of a *bona fide* purchaser of the lands from the railroad company. The State of Minnesota protested against the issuance of a patent to the Immigration Land Company, and claimed the land under the Act of August 3, 1892, under which undisposed-of lands of the United States, situated in certain sections and townships, were granted to the State for a public park. The Act of 1892 also provides that it shall not in any manner interfere with, supersede, suspend, modify or annul the vested right of any person, company, or corporation in respect to any of the land existing at the date of the passage of the act.

A hearing was had before the Commissioner of the General Land Office upon the issue made between the

shall not apply to lands settled upon subsequent to the first day of December, eighteen hundred and eighty-two, by persons claiming to enter the same under the settlement laws of the United States, as to which lands the parties claiming the same as aforesaid shall be entitled to prove up and enter as in other like cases.

State of Minnesota and the Immigration Land Company, wherein the Commissioner held:

"These tracts of land are within the second indemnity limits of the grant to the Northern Pacific Railroad (now Railway) Company, under act of July 2, 1864 (13 Stat., 365), as amended by Joint Resolution of May 31, 1870 (16 Stat., 378). On October 15, 1883, said railway company selected all of the above described tracts of land per list No. 12, Crookston, rearranged list No. 12 filed April 19, 1893. The bases given in support of the selections covered by such rearranged list were lands claimed to have been excepted from the company's grant of July 2, 1864, supra, by reason of the reservation subsisting at the date thereof on account of the grant made by the act of May 5, 1864 (13 Stat., 64), to aid in the construction of the Lake Superior and Mississippi Railroad.

"Said list of selections No. 12 was canceled as to these and other tracts of land by letter 'F' of March 20, 1907, upon authority of the decision of the Supreme Court of the United States in the case of the *Northern Lumber Company v. O'Brien* (204 U. S. 190), but the cancellation was suspended by the order of the Secretary of the Interior on April 1, 1907, and remained in that status until October 30, 1909, when said list of selections No. 12 was canceled as to these and other tracts of land.

\*       \*       \*       \*       \*       \*       \*       \*

"The lands above described, with others were sold and conveyed by the Northern Pacific Railway Company by warranty deed for a valuable consideration, January 14, 1891, to Frederick Weyerhauser, Peter Musser and M. G. Norton, whose title was afterwards conveyed by certain mesne conveyances to the applicant Immigration Land Company as set forth in its application to purchase dated February 2, 1907, and filed in your office February 9, 1907."

Of the issues involved the Commissioner said:

"The attorneys on behalf of the State of Minnesota

contend that the lands herein involved, which are situated within the limits of the Itasca State Park, were granted to the State by act of August 3, 1892 (27 Stat., 347), and it is urged on the part of the State that the grant took effect immediately, the lands being 'undisposed of' on that date, and that the claim asserted by the Immigration Land Company does not have the dignity of the 'vested right' protected in Sec. 2 of said act.

"On behalf of the Immigration Land Company it is contended that these lands were segregated from the mass of public lands by Crookston indemnity list of selections No. 12, made October 15, 1883, which was not canceled from the records until October 30, 1909; that the sale of the lands covered by cash entry No. 05008, in the name of the Immigration Land Company, by said railway company on January 14, 1891, was bona fide and for a valuable consideration, and it is urged that the Immigration Land Company should have its purchase of said lands protected under Sec. 5 of the act of March 3, 1887 (24 Stat., 556), and receive patent therefor; the attorneys for the Land Company contending that the lands involved were not 'undisposed of lands' on August 3, 1892, the date of the grant to the State."

After an opinion, in which the issues were considered, the Commissioner reached the conclusion:

"Accordingly, it is held that under Sec. 5 of the act of March 3, 1887, the rights of the Immigration Land Company under the facts and laws above cited are superior to the claim of the State under the act of August 3, 1892, that cash entry 05008 by said Immigration Land Company should remain intact.

"The protest of the State is hereby dismissed subject to the usual right of appeal within thirty days after notice to the Secretary of the Interior."

The decision of the Commissioner of the General Land Office was affirmed by the Secretary of the Interior, and

a rehearing denied. *State of Minnesota* v. *Immigration Land Co.,* 46 L. D. 14.

The purpose of the bill filed in this case is to quiet title to the lands in controversy by a decree in favor of the State of Minnesota notwithstanding the decision of the Secretary of the Interior, and to enjoin that officer from issuing patents for the lands to the Immigration Land Company.

We are of opinion that the State has mistaken its remedy, and if it be true that the Secretary has made a mistake in overruling the contention of the State that the title passed to it under the Act of August 3, 1892, relief must be sought in the courts after the issuance of patent.

The grant to the State of August 3, 1892, was of all undisposed of lands in certain townships, and § 2 specifically provided that it should not interfere with, supersede, suspend, modify or annul the vested rights of any person, company, or corporation in respect to any of said lands existing at the date of the passage of the act. The Act of March 3, 1887, permitting *bona fide* purchasers of certain lands, in the manner which we have stated, to make payment and acquire title to the lands excepted from the operation of the railroad grant, was then in full force. A part of these lands had been purchased before the act granting them to the State, by the predecessors of the Immigration Land Company, and the Secretary of the Interior held that the title thus acquired was superior to that of the State, and, in accordance with the decision of the Secretary, patents were about to be issued to it as a *bona fide* purchaser. This decision is not of an arbitrary character, and was made upon full hearing before the department of the Government entrusted with the administration of the public land laws, and the patents were still unissued when this suit was brought.

This is not a case where the title had passed absolutely in favor of the claimant, as was the fact in *Lane* v. *Watts,*

234 U. S. 525; 235 U. S. 17. It is a case where the grant was in terms of "undisposed-of lands," and subject to the vested rights of others. As against those holding such lands the title was not intended to pass.

The Act of 1887, under which the Immigration Land Company claims title, specifically provides that patents shall be issued for lands to which the purchaser is entitled. The patents not having issued, the lands in controversy were still in course of administration in that department of the Government which, until patent issues, has exclusive control of proceedings to acquire the title.

As we have said, the remedy must be sought in the courts after the issuance of patent. Under such circumstances as are here disclosed this court has uniformly so held. *Litchfield* v. *The Register*, 9 Wall. 575, 577; *Michigan Land & Lumber Co.* v. *Rust*, 168 U. S. 589, 592, 593; *Brown* v. *Hitchcock*, 173 U. S. 473; *Kirwan* v. *Murphy*, 189 U. S. 35; *Lane* v. *Mickadiet*, 241 U. S. 201, 208, 209.

It follows that the bill of the State must be dismissed, and it is so ordered.

*Dismissed.*


MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.