**Matthew CLAWSON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–3829 L.**

United States Claims Court.

Oct. 25, 1991.

Michael B. Neilsen, Pocatello, Idaho, atty. of record, for plaintiff.

David F. Shuey, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff, a mining prospector, is suing here to recover damages for an alleged taking of a mining claim he located adjacent to the Silver Creek in central Idaho, and, alternatively, for breach of an alleged implied contract with the Government allowing him to mine this claim. Defendant denies that a taking has occurred, arguing that the land upon which the claim was staked had previously been closed to mining by act of Congress and that plaintiff therefore held no property interest which could be taken. Further, defendant argues that no implied contract could have arisen because the Government's agents lacked authority to enter into such a contract.

These issues are before us on defendant's motion to dismiss the complaint. The court heard argument on the motion on October 17, 1991 at the conclusion of which it entered a ruling in defendant's favor. This opinion enlarges upon the reasons given for that ruling.

## INTRODUCTION

In 1980, Congress enacted the Central Idaho Wilderness Act (CIWA or Act), Pub.L. No. 96–312, 94 Stat. 948 (1980). This Act incorporated various sections of the Salmon River in Idaho into the National Wild and Scenic Rivers System and placed restrictions on the conduct of mining operations on the adjacent lands. *See* 16 U.S.C. § 1274(a)(24) (1988).

In its implementation of the statute, the Department of Agriculture's Forest Service determined that mining near tributaries of the Salmon River could take place only outside of their "perceptible banks above ordinary high water...." *Idaho Environmental Council v. Peterson*, No. 84–1362, slip op. at 4 (D.Idaho Jan. 22, 1986) (quoting the Forest Service's Public Notice and Notice of Prohibition). Federal lands not covered by this or any other prohibition remained open to prospecting under the General Mining Law of 1872, 30 U.S.C. §§ 21–54 (1988).

In October, 1981, plaintiff Matthew Clawson staked out a placer mining claim adjacent to Silver Creek, a tributary of the Salmon River, and filed the appropriate location notice with the Forest Service pursuant to the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1744 (1988). To proceed with mining activities on his claim, commonly known as the Flying Deuce, plaintiff was required to submit a proposed plan of operations to the Forest Service. This proposal was submitted in June, 1983, and the Forest Service then commenced a study to assess the environmental risks of the proposed mining operation. After concluding that the mining plan, subject to certain minor modifications, would not have a significant adverse effect on the environment, the Forest Service gave its approval in July, 1984. The approved plan allowed placer mining in the claim up to the perceptible banks of the ordinary high water mark of Silver Creek, with a small added buffer zone.

Before plaintiff could begin his mining operations, however, the Idaho Environmental Council and the State of Idaho filed suit to enjoin him from proceeding and also to force the Forest Service to rescind its approval of the mining plan. These petitioners claimed that, properly construed, the CIWA prohibited all placer and dredge mining within the watershed of any tributary to the Middle Fork of the Salmon River, rather than just inside the perceptible banks of these tributaries below their ordinary high water marks. The district court found for the environmental group, holding that "[t]he Central Idaho Wilderness Act of 1980 prohibited as of the effective date of said Act dredge and placer mining in any form within the watershed and drainage area of the Middle Fork of the Salmon River and all of its tributaries." *Idaho Environmental Council*, slip op. at 5. Because the Flying Deuce is clearly within the watershed of Silver Creek, a tributary of the Salmon River, the court required the Forest Service to rescind its approval of plaintiff's mining operation as well as the approval it had granted to a second planned mining operation located in the same area. Slip op. at 5–6. Additionally, the Agency was enjoined from granting any similar approvals in the future. The district court's decision was not appealed by plaintiff.

In 1989, plaintiff filed suit against the Forest Service under the Federal Tort Claims Act alleging negligence in the Agency's interpretation of the Act. Subsequently, however, plaintiff voluntarily dismissed his suit with prejudice after the same court denied a similar claim brought by the other mining interest adversely affected by the district court's original injunction. *Fixel v. United States*, No. 87–4158, 1989 WL 260198 (D.Idaho July 31, 1989). Plaintiff then filed suit in this court on October 2, 1990.

Plaintiff contends that the Forest Service's cancellation of his plan of operations,

as ordered by the district court, effected a taking of his mining claim without just compensation in violation of the Fifth Amendment of the Constitution. He also contends that the Forest Service's approval of his claim and plan of operation gave rise to an implied contract for mining the Flying Deuce, and that by rescinding approval of the plan the Forest Service breached this contract.

## DISCUSSION

### The Fifth Amendment Claim

■ The first count of plaintiff's complaint alleges that the district court's holding in *Idaho Environmental Council v. Peterson*, No. 84–1362 (D.Idaho Jan. 22, 1986) and the Forest Service's cancellation of his mining plan amounted to a taking of his mining claim without just compensation. We cannot endorse this contention. The remedy provided by the Just Compensation Clause of the Fifth Amendment presupposes that the claimant has a property interest capable of being taken: "nor shall *private property* be taken for public use without just compensation." U.S. Const. amend. V (emphasis added). However, the property at issue here belongs to the Federal government, not to the plaintiff. Plaintiff never acquired any property interest in the land or to the minerals in place.

■ Property interests " 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980)). In this instance, the independent source of substantive law is the General Mining Law of 1872, 30 U.S.C. §§ 21–54 (1988), which allows citizens to explore and mine valuable mineral lands of the United States, except where those lands have been withdrawn by statute. *Lockhart v. Johnson*, 181 U.S. 516, 520, 21 S.Ct. 665, 666, 45 L.Ed. 979 (1901). Clearly, compliance with the statute and its implementing regula-

tions may give a mineral claimant a possessory interest in property the extinguishment of which can support a Fifth Amendment taking claim. *Skaw v. United States*, 740 F.2d 932, 936 (Fed.Cir.1984); *Freese v. United States*, 6 Cl.Ct. 1, 10 (1984) ("[a] validly located mining claim is ... an interest in real property."), *aff'd*, 770 F.2d 177 (Fed.Cir.1985).

Here, however, the Central Idaho Wilderness Act had closed to placer mining the lands upon which the Flying Deuce claim was located. 16 U.S.C. § 1274(a)(24). Further, the Idaho District Court found the statutory prohibition to be effective as of the date of the enactment of the Act and thus before the date on which plaintiff filed his claim. To repeat the district court's words: "The Central Idaho Wilderness Act of 1980 prohibited as of the effective date of said Act dredge and placer mining in any form within the watershed and drainage area of the Middle Fork of the Salmon River and all of its tributaries." Slip op. at 5.

Accordingly, plaintiff could not have acquired a compensable interest in the mining property. Under the terms of the relevant statute, the creation or perfection of such an interest was foreclosed. *Cameron v. United States*, 252 U.S. 450, 460, 40 S.Ct. 410, 412, 64 L.Ed. 659 (1920) (no mining claim could be shown after date land closed to mining); *Brown v. Department of Interior*, 679 F.2d 747 (8th Cir.1982) (mining claims void where land withdrawn); *Pathfinder Mines Corp. v. Clark*, 620 F.Supp. 336 (D.Ariz.1985) (mining claims void *ab initio* when located after land closed to mining), *aff'd sub nom. Pathfinder Mines Corp. v. Hodel*, 811 F.2d 1288 (9th Cir. 1987).

■ Plaintiff attempts to overcome this result by arguing that at the time he originally located his mining claim, the Forest Service's interpretation of the CIWA was the only authoritative guidance available to him concerning the scope and meaning of that Act. His contention, therefore, is that having justifiably placed his reliance on the Forest Service's interpretation, the Government is now estopped from denying his

acquisition of a property interest that remained enforceable—and its loss therefore compensable—until invalidated by the district court's decision.

██ The difficulty with this argument is two-fold. First, as we have already indicated, the district court's decision determined that the CIWA's prohibition related back to the date of the statute's enactment. Given the retroactive application of the court's decision, it necessarily follows that no binding significance could attach to the Forest Service's interim interpretation. Thus, any right to dredge or placer mine the claim was, in effect, void *ab initio*.

Moreover, if plaintiff disagreed with the retroactive character of the district court's ruling, then the matter should have been brought to that court's attention or the issue should have been pursued on appeal. This court, on the other hand, has no authority to reexamine the district court's decision. That decision must be taken as a "given" here, *Florida Rock Indus. Inc. v. United States*, 791 F.2d 893, 899 (Fed.Cir. 1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); and by the force of the district court's decision plaintiff is precluded from asserting a property interest necessary to support a Fifth Amendment taking claim.

Nor can an argument of estoppel rescue plaintiff from his dilemma. In *United States v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), the Supreme Court addressed a situation where the state of California claimed that the United States, by the conduct of its agents and through the operation of estoppel, had given up any interest it may have had in the seabed extending three miles out from California's coast. In rejecting such a possibility, the Court held:

> The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the

Government to lose its valuable rights by their acquiescence, laches, or failure to act. 332 U.S. at 40, 67 S.Ct. at 1669.

██ Nothing in the facts of this case would allow us to sanction a different rule here. The Forest Service's interpretation of the statute, even assuming its reasonableness, was in the final analysis deemed wrong as a matter of law by the district court. The result of the ruling is to deprive the Forest Service of the legal authority necessary to support an estoppel claim against the Government. Estoppel, to the extent it could ever provide a viable basis for monetary relief against the United States, may operate only where the conduct relied on was within the scope of the Government agent's authority. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

### The Implied Contract Claim

██ The second count of plaintiff's complaint alleges that the Forest Service's acceptance of the claim and approval of the plan of operations for mining the site constitutes an implied-in-fact contract to allow mining operations to go forward. This argument, too, is analytically flawed. Neither the terms of the General Mining Law nor the administrative regulations implementing that Law can legitimately be viewed in contract terms. "It would do violence to traditional contract theory, not to mention the operation of government, to hold that any statute requiring some action by a citizen to obtain a benefit or protect a right constituted an open offer to contract." *Last Chance Mining Co. v. United States*, 12 Cl.Ct. 551, 556 (1987), *aff'd*, 846 F.2d 77 (Fed.Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988). Where rights and obligations are prescribed by statute and regulation rather than determined through the mechanics of a bilateral exchange, there is no contract in the usual sense of that word. *See Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669, 105 S.Ct. 1544, 1552, 84 L.Ed.2d 590 (1985).

But even if one could adopt plaintiff's contract theory, no change in outcome would result: precisely the same lack of authority that undercuts plaintiff's estoppel argument also defeats his contract theory. The Government's agents cannot contract to do that which they do not have a legal right to do. The consequence of the district court's decision is to deny the Forest Service the right to approve mining claims of the sort plaintiff presents here.

## CONCLUSION

For the reasons stated in this opinion, we hold that plaintiff held no property interest in the Flying Deuce mining claim capable of being taken and further that he does not have an implied contract with the Forest Service to mine that claim. Therefore, we grant defendant's motion to dismiss. The Clerk shall enter judgment dismissing the complaint for failure to state a claim upon which relief can be granted. No costs.