Liza FLOYD, Individually and as Personal Representative of the Estate of Marvin I. Floyd, and Mike I. Floyd, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–651 C.

United States Claims Court.

Sept. 22, 1992 [1].

Jack D. Simrill, Hilton Head, S.C., for plaintiffs.

Anthony J. Ciccone, with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, Asst. Director Sharon Y. Eubanks, Dept. of Justice, Washington D.C., Sandra L. Burr, Small Business Admin., Columbia, S.C., and Steven C. Bott, Farmers Home Admin., Atlanta, Ga., for defendant.

## ORDER

(i) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

(ii) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

&

(iii) DIRECTING ENTRY OF JUDGMENT DISMISSING THE COMPLAINT

1. This Order was originally issued as an unpublished ruling of the court on September 1, 1992. Reissuance of the Order is now undertaken pur- suant to defendant's motion for publication, filed September 22, 1992.

WIESE, Judge.

## I

On September 29, 1982, plaintiffs' decedent, Marvin Floyd, the owner and operator of a several hundred acre produce farm in Jasper County, South Carolina, executed a security agreement in favor of the Farmers Home Administration (FmHA) to collateralize a farm assistance loan which that agency had extended to him. Among the terms of this agreement was a provision obligating FmHA to "make or insure future loans or advances to Debtor [for farming purposes] provided funds are available and the Debtor meets all then current requirements imposed by [FmHA] regulations."

The gravamen of this suit is a claim by the survivors of Marvin Floyd (his wife and his son) that FmHA breached its commitment to provide future funding by cancelling a 1984 farm operating loan after the funding for that loan had been approved, thereby precipitating a real estate foreclosure by the Small Business Administration that resulted in loss of the family farm.

Plaintiffs seek damages for the loss of the farm and farm equipment and have moved for partial summary judgment. The United States has cross-moved, either to dismiss for lack of jurisdiction or for grant of summary judgment on the merits. Oral argument was heard on August 20, 1992 at the conclusion of which the court granted defendant's motion for summary judgment and stated its intention to finalize the ruling by a written order enumerating, with more particularity, the reasons for the conclusion reached.

## II

The court's decision to grant judgment in defendant's favor rests on two independent analyses, the first involving the enforceability of the Government's purported promise to make future loans; the second addressing the alleged breach of that promise. Neither analysis allows recovery.

■ As previously noted, the security agreement relating to chattels and crops which plaintiffs' decedent had executed in favor of FmHA on September 29, 1982, contained, among other terms, a provision stating that "Secured Party [FmHA] will make or insure future loans or advances to Debtor to enable Debtor to raise or harvest farm crops or raise livestock or other animals, provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party." It is this clause which plaintiffs invoke in support of their breach of contract argument.

In this court's view, the language quoted is legally insufficient to form the basis for a breach of contract. Granted, there are Claims Court decisions to the contrary. In *Campbell v. United States*, 16 Cl.Ct. 690, 697 (1989), for example, the court said of identical contract language that "this clause provides an adequate basis for plaintiffs to formulate a contractual claim capable of being presented before this Court." Similarly, in *Nutt v. United States*, 12 Cl. Ct. 345, 354 (1987), the same language was seen as giving rise to "an affirmative contractual obligation toward an incumbent borrower." [2] This court does not agree that the words of the security agreement should be taken as promissory in content; hence, the court does not agree with the position taken in the cited decisions. Two reasons suggest a different outcome.

First, the language in question contemplates no undertaking on the part of FmHA beyond that encountered by the agency in the discharge of its everyday responsibilities, *i.e.*, to administer various farm assistance loan programs authorized by Con-

---

**2.** Although the outcome reached in *Nutt* (a denial of relief for lack of any breach) eventually came before the Federal Circuit, the decision on appeal did not specifically address the validity of the contract rationale. Instead, in affirming the judgment below, the appellate court simply noted its agreement with the trial court's final reasoning, *i.e.*, that any undue delay by FmHA

in making a loan pursuant to the terms of the security agreement "is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction." *Smithson v. United States*, 847 F.2d 791, 795 (Fed.Cir.1988), *aff'g Nutt v. United States*, 12 Cl.Ct. 345 (1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

gress on behalf of applicants meeting prescribed lending criteria. *See e.g.*, 7 C.F.R. § 1941 (1984) (involving "operating" loans); *id.* § 1945.101 (involving "economic emergency" loans); *id.* § 1945.145 (involving "emergency" loans).

■ Since the language of the security agreement only obliges the agency to act when "funds are available," and then only when the borrower satisfies "all ... current requirements imposed by regulations," it is essentially no more than a restatement of a pre-existing legal duty. Hence, the language cannot stand as consideration sufficient to support a return promise. Restatement (Second) of Contracts § 73 (1979). Moreover, the fact that the language in question is included as part of an agreement that is otherwise enforceable, does not alter its gratuitous character. *Id.* § 80(2). That which one is under a legal duty to do, cannot be the basis for a contractual promise. *Rosenbaum v. Davis Iron Works, Inc.*, 669 F.Supp. 813, 818 (E.D.Mich.1987), *aff'd in pertinent part*, 871 F.2d 1088 (6th Cir.), *cert. denied*, 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989).

The same reasoning would suggest, of course, that FmHA never intended the language of the security agreement to be more than a mere expression of intention, as opposed to words of commitment. But, regardless of the purpose intended, it is clear that the performance of a duty charged by law cannot simultaneously be the subject of a contractual promise.

The other reason that leads this court not to ascribe a promissory intent to the language of the security agreement concerns the nature of the administrative process. Fundamentally, administrative agencies are charged with the task of supplying and executing the details essential to the fulfillment of legislative goals pursuant to standards defined by Congress in statutory law. *Yakus v. United States*, 321 U.S. 414, 424–25, 64 S.Ct. 660, 667–68, 88 L.Ed. 834 (1944); *Morgan v. United States*, 304 U.S. 1, 14, 58 S.Ct. 773, 775, 82 L.Ed. 1129 (1938). The exercise of judgment appropriate to the circumstances lies at the core of administrative decision-making. *Burlington Truck Lines Inc. v. United States*, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) ("[e]xpert discretion is the lifeblood of the administrative process").

In this context then, it would be out-of-step with the responsibilities of administrative decision-making for FmHA to transform, through the mechanics of a bilateral contract, duties that are essentially discretionary in nature—and reviewable, if at all, under reasonableness standards—into obligatory undertakings enforceable by money judgment. Such an intentional relinquishment of the flexibility essential to effective administrative action—which, in the present context, is what a "promise" to make a future loan impliedly signifies—should not be assumed. The problem is avoided by taking the words of the security agreement as simply a recital of a potential future entitlement rather than as an outright promise of that entitlement.

To sum up then, if taken as a promise, the clause fails as consideration; more reasonably construed, however, the clause should not be taken as a promise at all. For each of these reasons, this court considers the quoted language insufficient to support a suit for money damages here.

The issues addressed above were raised by the court on its own motion with neither side having had the opportunity to speak to those issues. Fairness counsels, therefore, that the court go on to deal with the case on the premise on which it was argued, *i.e.*, that the quoted language is adequate to support a suit for money damages based on an asserted breach by FmHA.

■ The facts, however, do not make out a case of breach. What the evidence shows is that, at the time application was made for the 1984 farm assistance loan in issue here, plaintiffs' decedent was seriously delinquent in repayments owed under a disaster assistance loan that had been extended to him by the Small Business Administration (SBA) in 1977.

Because of this pre-existing indebtedness (which was secured by a lien against the farm land), FmHA asked for, and eventual-

ly obtained, a commitment from the SBA— a so-called "Non–Disturbance Agreement"—agreeing to postpone the commencement of any foreclosure action until the end of 1984. However, the resolution of this inter-agency matter took up approximately two and a half months (from roughly mid-April to early July, 1984) and, by the time the problem was finally ironed out, the 1984 spring planting season had passed. Thus, since the funds could no longer be applied to their intended purpose, FmHA cancelled the obligation of funds that previously had been earmarked for the intended loan.

On these facts, there can be no breach of the claimed duty to make a loan. Clearly, FmHA had the authority—indeed, the responsibility—to protect the intended advance of funds from the foreclosure risks associated with SBA's prior lien. 7 C.F.R. § 1941.19(a)(4).

Nor can FmHA be held to account for the time taken up in getting the Non–Disturbance Agreement in acceptable form. The delay, if there was one, had to do with the SBA's initial reluctance to execute the agreement in the form requested by FmHA.

Inasmuch as FmHA acted consistent with its responsibilities, there can be no breach of contract here.

### III

For the reasons stated, plaintiffs' motion for partial summary judgment is denied and defendant's cross-motion for summary judgment is granted. The complaint is to be dismissed. Costs shall not be awarded.