# United States Court of Appeals
# for the Federal Circuit

_____

**JULIE CHATTLER,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES AND DEPARTMENT OF STATE,**
*Defendants-Appellees.*

_____

2010-1066

_____

Appeal from the United States District Court for the Northern District of California in case no. 07-CV-04040, Judge Maxine M. Chesney.

_____

Decided: January 10, 2011

_____

WALTER H. SARGENT, Walter H. Sargent, P.C., of Colorado Springs, Colorado, argued for plaintiff-appellant. On the brief were ROBERT B. CAREY, Hagens Berman Sobol Shapiro LLP of Phoenix, Arizona; SHANA E. SCARLETT, of Berkeley, California; and MEGAN E. WAPLES, The Carey Law Firm, of Colorado Springs, Colorado.

MICHAEL P. ABATE, Trial Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With

him on the brief were TONY WEST, Assistant Attorney General, and MICHAEL S. RAAB, Attorney.

---

Before NEWMAN, LINN, and DYK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LINN.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

LINN, *Circuit Judge*.

Julie Chattler ("Chattler") appeals the grant of judgment on the pleadings by the United States District Court for the Northern District of California in favor of defendants, United States and Department of State (collectively, "government" or "Department"), that no implied contract was formed between the government and Chattler for expedited processing of her passport application in exchange for a $60 expedite fee. *Chattler v. United States*, No. 07-CV-04040 (N.D. Cal. June 5, 2008) ("*Contract Opinion*"). Chattler also appeals the grant of summary judgment in favor of the government that it did not violate 22 C.F.R. § 51.63 (2007)[1] in failing to automatically refund Chattler's expedite fee. *Chattler v. United States*, No. 07-CV-04040 (N.D. Cal. July 10, 2009) ("*Summary Judgment*"). Because the district court did not err in determining that no contract was formed and that no automatic refund was due, this court affirms.

## BACKGROUND

After the events of September 11, Congress enacted the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004). Section 7209(b)(1) of that Act required the State Depart-

---

[1] All citations to 22 C.F.R. §§ 51.63 and 51.66 are to the Regulations in force in 2007.

ment and the Department of Homeland Security to develop a plan requiring anyone entering into the United States, including those entering from Canada, Mexico, and the Caribbean, to present a valid passport. The State Department issued the Western Hemisphere Travel Initiative implementing this policy. These developments greatly increased the demand for passports. In an attempt to accommodate persons with urgent needs for passports in the face of this demand, the State Department established a program for expedited processing of certain passports, to be funded by expedite fees. The availability of this service was posted on the State Department's website and set forth in the passport application form.

Chattler applied for a passport on June 11, 2007. The passport application form she completed included provision 5(b) relating to expedited processing and stating: "Expedited requests will be processed in three workdays from receipt at a passport agency. The additional fee for expedited services is $60." Decl. of Ann Barrett in Supp. of Def.'s Mot. to Dismiss 16, *Chattler v. United States*, No. 07-CV-04040 (filed Oct. 9, 2007), ECF No. 10-2 ("*Barrett Decl.*"). Chattler paid the additional fee. The passport agency received her application along with the expedite fee on June 19, 2007, but by August 1, 2007, Chattler had not yet received her passport. Chattler submitted a second request in person, and received her passport in time to fulfill her travel plans. It is undisputed that Chattler's first expedite request was not processed within three days, and that she is entitled to a refund of her expedite fee. Rather than requesting a refund of the fee, and in response to the government's failure to make good on its expedited service program, Chattler initiated legal action.

Specifically, Chattler[2] brought an action in district court asserting a Little Tucker Act claim under 28 U.S.C. § 1346(a)(2) for breach of contract. She asserted that provision 5(b) of the passport application was an offer, which she accepted by paying the $60 expedite fee, and that the government breached the resulting contract by failing to process her passport within three days. She also asserted that the government made a second offer on the Department of State's website that she would receive her completed passport "in about 3 Weeks." She contended that this offer, too, was accepted by paying the $60 expedite fee, and that the contract was breached by failure to deliver her passport within three weeks. Chattler also brought a regulatory claim alleging that the government had violated 22 C.F.R. § 51.63 in failing to refund her expedite fee automatically and without a request on her part, when her passport application did not receive expedited processing. In her complaint, Chattler originally asked for "all consequential and special damages . . . not to exceed $10,000 for any individual" based on both her contract theory and the asserted regulatory violation, but later explicitly waived any right to damages over $60. Reply Br. of Pl.-Appellant 19 (regulatory claim), 20-21 (contract claims).

---

[2]     Chattler styled her complaint as a "class action pursuant to Federal Rule [sic] of Civil Procedure 23(a) and 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, who paid an extra fee to secure expedited processing of their passports and whose passports were not processed within the required three-day period or were not delivered within the promised time." Compl. 1, *Chattler v. United States*, No. 07-CV-04040 (filed Aug. 7, 2007), ECF No. 1. However, it does not appear that there was a motion to certify this case as a class action, and the case has not, in fact, been certified. Consequently, we do not treat this case as a class action.

The government answered by denying Chattler's claims and indicated its willingness to refund the $60 fee on request. Chattler refused to make such a request or to have her complaint treated as a constructive request, presumably to avoid rendering her claims moot. The government moved for judgment on the pleadings on Chattler's contract claims and for summary judgment on the regulatory claim. The district court granted both motions and Chattler appealed.

The district court had jurisdiction under 28 U.S.C. § 1346(a)(2), and this court has jurisdiction under 28 U.S.C. § 1295(a)(2).

## DISCUSSION

## I. Regulatory Claims

At the time Chattler filed her application, section 51.63(c) of Title 22 of the Code of Federal Regulations stated: "The passport expedite fee will be refunded if the Passport Agency does not provide the requested expedite processing as defined in § 51.66." Section 51.66(b) defined expedited processing as "completing processing within 3-business days commencing when the application reaches a Passport Agency . . . . The processing will be considered completed when the passport is ready to be picked up by the applicant or is mailed to the applicant." The government concedes that Chattler is entitled to a refund of her $60 expedite fee because the government failed to process her application within three business days. The issue is whether Section 51.63 unambiguously requires that the government *automatically* provide a refund, or whether the government can, consistent with the regulations, require an applicant to make a refund request before it is obliged to issue the refund.

We review a grant of summary judgment under the law of the regional circuit. *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1362 (Fed. Cir. 2008). The Ninth Circuit reviews the grant of summary judgment de novo, "determining whether, viewing all evidence in the light most favorable to the nonmoving party, there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Kraus v. Presidio Trust Facilities Div.*, 572 F.3d 1039, 1043-44 (9th Cir. 2009).

We defer to the agency's interpretation of its own regulation unless it is "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("*Seminole Rock*"). The agency "interpretation need not be the best or most natural one by grammatical or other standards." *Pauley v. Bethenergy Mines, Inc.*, 501 U.S. 680, 702 (1991).

The Department of State interprets Section 51.63 as requiring a request before a refund is issued. A statement on the Department of State's website first published on June 14, 2007 states: "Travelers who: A) Paid the $60 fee for expedited service and B) Have reason to believe that they did not receive expedited service *should contact the Department of State* to request that the Department consider a refund of the expedite fee. *Customers should submit a written request* with their passport number, if available, name, date and place of birth, and approximate date(s) they applied for their passport and received their passport (if applicable). Mailing address and phone number should also be included." Decl. of Florence Fultz In Supp. Of Def.'s Mot. For Summ. J., Fultz Ex. 14 p. 5, *Chattler v. United States*, No. 07-CV-04040 (filed January 30, 2009), ECF No. 111-8 (emphases added). *See also Refund of Expedite Passport Fees*, Travel.State.Gov Policy and Announcements, http://www.travel.state.gov/passport/ppi/refund/refund_3259.html (last

visited Oct. 27, 2010) (similar statement in current iteration).   The government has represented in its brief and at oral argument that its long-standing practice has been to require a request from the applicant before a refund is issued.   Br. of Def.-Appellees 6, 23 ("There is not and has never been an automated process for identifying which applicants received the expedite processing within the meaning of the regulation.   Instead, the Department reasonably relies upon refund requests by unsatisfied applicants to trigger the [refund] process."); Oral Arg. 20:55-21:08, 24:30-24:55, *available at* http://oralarguments.cafc.uscourts.gov/mp3/2010-1066.mp3 ("[T]he department's view is that has been its practice [to require a request] consistently and historically all the way along.").

Chattler argues that this interpretation is contradicted by the preamble of the Federal Register Notice implementing the expedited processing rules: "There will be situations in which expedited passport processing cannot be completed within three days. . . .   In such circumstances, the applicant will be notified and the fee will be refunded."  59 Fed. Reg. 48,998, 48,999 (Sept. 26, 1994).   Chattler's argument is inapposite.   The phrase "the fee will be refunded" in the preamble sheds no light on the meaning of the phrase, "[t]he passport expedite fee will be refunded" in Section 51.63; as discussed below, "will" does not imply "will automatically."   To the extent that the preamble suggests that the Department is responsible for initiating the refund process by notifying the applicant of the Department's failure to process her expedite request within the specified time frames, Chattler has not argued that she failed to receive such notice.   Thus, the preamble does not serve to undermine the Department's interpretation of Section 51.63 as requiring a refund request.

Chattler next argues that the Department's interpretation is "plainly erroneous or inconsistent with the regulation." *See Seminole Rock*, 325 U.S. at 414. Chattler argues that the word "will" unambiguously compels the government to issue a refund automatically to all passport applicants who requested but failed to receive expedited processing, without regard to whether a request was made. The government argues that "will" does not prescribe the procedure or process by which the refund will be granted, and that the Department of State's requirement of a refund request as a condition to the issuance of a refund is consistent with the regulation. The government's analogy helps to illustrate this point. A retail policy could read: "The difference in purchase price *will be refunded* if another store advertises this product for less." The most natural reading of "will be refunded" does not presuppose an automatic procedure for administering the refund. Instead, it is wholly consistent with a policy requiring a customer to make a request for a refund of the difference. To suggest, as Chattler essentially argues, that these procedural requirements are inconsistent with the word "will" simply because an applicant may not take the necessary steps to collect a refund is contrary to the plain meaning and ordinary usage of the word.

This court again agrees with the government. In the context of Section 51.63, the word "will" simply describes future action, but does not preclude the imposition of conditions before such action is due. The possibility that a request may not be made by an applicant, and as a consequence, a refund may not be issued, does not make the withholding of refunds arbitrary. Nor is such government action discretionary; if a request is made (and the applicant is entitled to a refund) the government concedes that a refund must and will be issued. The agency's interpretation is consistent with the language of

Section 51.63 and is not "plainly erroneous or inconsistent with the regulation." *See Seminole Rock*, 325 U.S. at 414. Thousands of refunds have issued to applicants who initiated the refund process by submitting a refund request. Chattler argues that only a relatively small percentage of applicants who were entitled to a refund for the Department's failure to expedite actually received the refund, and that the refund request requirement is simply a means for the Department to retain undeserved funds. The government responds that the statistics underreport the true percentages, and that the refund request requirement is necessary to ensure that refunds are received by the proper parties. Even if we accept the factual validity of Chattler's statistics, the failure of some parties to request a refund may be due to any number of reasons, and the government's retention of unrequested refunds does not compel the conclusion that the Department imposed the refund request requirement as a means of improperly retaining the fees rather than as a reasonable way of assuring that refunds are made to the proper parties.

For the foregoing reasons, this court holds that the phrase, "will be refunded" in Section 51.63(c) of the Code of Federal Regulations Title 22 does not imply "will be refunded without further action by the applicant," and does not require the government to issue an automatic refund without a request by the applicant. We thus affirm the district court's grant of the government's summary judgment motion on Chattler's regulatory claim.

## II. Contract Claims

We review a grant of judgment on the pleadings under the law of the regional circuit. *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984 (Fed. Cir. 2009).

The Ninth Circuit reviews the grant of judgment on the pleadings de novo. *Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010). "A judgment on the pleadings is proper if, taking all of [the plaintiff's] allegations in its pleadings as true, [the defendant] is entitled to judgment as a matter of law." *Id.* Because there are no facts in dispute, the question of whether a contract was formed is a question of law. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

The government is subject to suit only if it has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). A waiver "cannot be implied but must be unequivocally expressed." *Id.* (internal quotation omitted). The Tucker Act provides a waiver of sovereign immunity for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any *express or implied contract* with the United States." 28 U.S.C. § 1491 (emphasis added). An express contract with the government requires proof of "mutual intent to contract, including an offer, an acceptance, and consideration. A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Group*, 104 F.3d at 1325 (internal citations omitted).

In the present case, the district court dismissed Chattler's contract claims "for the reasons stated by defendants in their papers and at the hearing conducted May 23, 2008." *Contract Opinion* at 1, 3. This court agrees that no contract was formed by the timing provision in the passport application or by the statements on the Department's website.

### A. Passport Application Provision 5(b)

Chattler argues that provision 5(b) in the passport application and a statement on the Department of State website formed the basis of an express contract to process the application within three days and return it to Chattler within about two weeks. Provision 5(b) in the passport application reads: "**For faster processing**, you may request expedited service. <u>Expedited requests will be processed in three workdays from receipt at a passport agency</u>. The additional fee for expedited service is $60." *Barrett Decl.* 16.

Passport application provision 5(b) was not an offer. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179, 1183 (Ct. Cl. 1971) (citing Restatement (Second) of Contracts § 24 (Tentative Draft No. 1) (1964)). Provision 5(b) was not a manifestation of willingness to enter into a bargain for at least four reasons.

First, provision 5(b) categorizes the applicant's initiation of the expedite procedure as a "request," *Barrett Decl.* 16 ("**For faster processing**, you may request expedited service."), which belies any obligatory intent, *see Cutler-Hammer*, 441 F.2d at 1179 ("[N]owhere is there a *promise* on the part of the Government to sell even one ounce of silver at the price mentioned. Purchasers are simply invited to make 'application' to buy certain quantities of silver at a price which will be *not less than* $ 1.29+.").

Second, "[t]he obligation of the government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention." *Id.* at 1182. Likewise statements of information or definition are not statements of obligation. The

expedite provision in the passport application was included in furtherance of a regulatory scheme that (1) allowed applicants to "request expedited processing by a Passport Agency," 22 C.F.R. § 51.66(a); (2) defined expedited processing, "[e]xpedited passport processing shall mean completing processing within 3- business days . . . ," 22 C.F.R. § 51.66(b); and (3) called for a fee to be collected "in the amount prescribed in the Schedule of Fees for Consular Services," 22 C.F.R. § 51.66(c). Provision 5(b) substantially mirrors the informational content of the regulation: (1) it authorizes expedited processing ("**For faster processing**, you may request expedited service"); (2) defines expedited processing ("Expedited requests will be processed in three workdays from receipt at a passport agency"); and (3) notes the fee from the Schedule of Fees for Consular Services ("The additional fee for expedited service is $60"). *Barrett Decl.* 16. The use of language that simply restates obligations created by a regulation evinces that the government "never intended the language [] to be more than a mere expression of intention, as opposed to words of commitment." *Floyd v. United States*, 26 Cl. Ct. 889, 891 (1992), *aff'd on other grounds* 996 F.2d 1237 (Fed. Cir. 1993), *cert. denied* 510 U.S. 925 (1993). *See also Clawson v. United States*, 24 Cl. Ct. 366, 370 (1991) ("Where rights and obligations are prescribed by statute and regulations rather than determined through the mechanics of a bilateral exchange, there is no contract in the usual sense of that word."). The word "will" is often used in this definitional way, without creating an underlying obligation. See *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/will (last visited July 20, 2010) (defining "will" as "**3** –used to express futurity <tomorrow morning I *will* wake up in this first-class hotel suite – Tennessee Williams>"). We also note the use of the passive voice, i.e. "will be processed," makes it less likely that the government intended

to be bound.  *Cf. Jones v. United States*, 526 U.S. 227, 258 (1999) (Kennedy, J., dissenting) ("In addition, there is some significance in the use of the active voice in the main paragraph and the passive voice in clauses (2) and (3) of § 2119.").  *Compare Airborne Data, Inc. v. United States*, 702 F.2d 1350 (Fed. Cir. 1983) (per curiam) ("Contracting officers and other Governmental personnel shall comply with the terms of the legend.").

Third, as the relevant regulations confirm, an applicant's assent to the "offer" would not necessarily conclude the bargain because the Department may decline to accept the expedite request under certain conditions.  *See* 22 C.F.R. § 51.66(d) ("A request for expedited processing normally will be accepted only if the applicant can document urgent departure with airline tickets showing confirmed reservation or similar evidence.  The Passport Agency may decline to accept the request if it is apparent at the time it is made that the request cannot be granted.").

Fourth, the form of provision 5(b) informs the substance; the single sentence of the provision is a far cry from the comprehensive instruments that typify government contracts under the Federal Acquisition Regulations and in the express contract cases relied on by Chattler.  The Claims Court confronted a similar assertion of a contract arising out of a statement in an agency publication in *Girling Health Systems, Inc. v. United States*, 22 Cl. Ct. 66 (1990).  There, an Internal Revenue Service ("IRS") publication included a single sentence that was alleged to constitute an offer to contract: "You should generally receive determination on your election within 60 days after you have filed form 2553."  *Id.* at 68.  The court found that no contract was formed, in part because the basis for the contract was a simple statement in an IRS publication, and "there has been no negotiation between

IRS personnel and the plaintiff and no one from the IRS has assented to anything." *Id.* at 70. This court affirmed because there, like here, the "language manifest[ed] no intent to be bound." *Girling Health Sys., Inc. v. United States*, 949 F.2d 1145, 1147 (Fed. Cir. 1991).

Chattler relies on two sets of cases to support her contention that provision 5(b) was an offer. First, she relies on a group of express contract cases in which the sufficiency of the offer was not in dispute. *See Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337-38 (Fed. Cir. 2000) (resolving whether an administrative exhaustion provision of a contract covered particular types of inaction by the government); *N. States Power Co. v. United States*, 224 F.3d 1361, 1364 (Fed. Cir. 2000) (same); *Hughes Commc'ns Galaxy v. United States*, 998 F.2d 953, 954 (Fed. Cir. 1993) (noting that the government was bound by a contract to provide its "best efforts" to launch commercial payloads through the space shuttle program, in part because "the government did not challenge the validity of the contract before the Claims Court and does not do so here"). *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012 (Fed. Cir. 1996) is closer, in that it addressed whether a contract was formed. However, the issues in that case were whether any government official had the authority to contract and whether certain conditions precedent precluded contract formation, not whether certain governments statements constituted offers. No similar issues are presented here. Because none of these cases addressed whether certain statements of the government constituted offers, they are inapposite.

Chattler also relies on a second set of cases, which found that the government entered into implied-in-fact contracts to keep proprietary information confidential. *See Airborne Data*, 702 F.2d 1350; *Research, Analysis, &*

*Dev., Inc. v. United States*, 8 Cl. Ct. 54 (1985). We do not believe these cases are dispositive.

Moreover, Chattler has failed to cite, and this court has been unable to find, a single case where the government was held to have contracted to perform a service in furtherance of a regulatory scheme by virtue of a statement in a form application. In the closest case, *Girling*, the Claims Court determined that no contract was formed, 22 Cl. Ct. at 73, and this court affirmed, 949 F.2d at 1147. The only cases where the government was bound in contract to perform a service are those in which the contract was manifested by an express obligation observing the formalities of typical government contracts, including a signature by an authorized agent. *See Me. Yankee*, 225 F.3d at 1337-38; *N. States Power*, 224 F.3d at 1364; *Wells Fargo*, 88 F.3d at 1019; *Hughes Commc'ns*, 998 F.2d at 954.

For these reasons, this court holds that the government did not manifest an intent to be bound in contract by provision 5(b) of the passport application.

### B. Statements on the Department's Website

We turn next to Chattler's assertion that the statements on the Department's website were an offer to contract, wherein the government promised to return her passport to her within two to three weeks in exchange for payment of the expedite fee. The relevant statement on the website includes the following table:

| If you apply today | And Choose | What to expect |
|---|---|---|
| At a Passport Acceptance Facility* or By Mail (for renewal, additional pages, and amendment) | Routine Service | We will process your application within four to six weeks from time of receipt |
| | Expedited Service** **Plus** Overnight delivery service for: Sending your application **and** Returning your passport to you | We will process your application within about 3 Weeks (door-to-door; see note below) |

*Barrett Decl.* 32. The "**" footnote reads:

> **Expedite Service: If you apply for your passport today and request Expedited Passport Processing, you can expect to receive your passport in about 3 weeks. The 3 week estimated timeframe for receipt of your passport takes into consideration the additional time it may take to receive your passport application at a Passport Agency/Center when you apply for Expedited Passport Processing through a designated Passport Acceptance Facility and for the passport to be mailed to you. It may take longer for customers who apply for a renewal by mail without "Expedite" marked on the mailing envelope.

> Effective August 16, 2007, the Department's standard for expedited passport processing completion, as defined in 22 C.F.R. 51.66, is ten business days from . . . receipt of your passport application at a Passport Agency/Center . . . . Expedited passport processing is considered complete when the passport is ready to be picked by an applicant or when it is put in the mail to the applicant.

*Id.*

These statements do not constitute an offer to contract. The phrase "We will process your application within about 3 Weeks" is under the heading of "What to *expect*," and the "**" note explicitly says that an applicant "can *expect* to receive [her] passport in about 3 weeks." *Id.* (emphases added). The note also explains that three weeks is merely an "*estimated* timeframe." *Id.* (emphasis added). These statements use language of intention or prediction, not obligation, and thus do not constitute offers to contract. *See Cutler-Hammer*, 441 F.2d at 1182 ("The obligation of the government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention.").

## CONCLUSION

For the foregoing reasons, this court affirms the judgment of the United States District Court for the Northern District of California.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

---

**JULIE CHATTLER,**
*Plaintiff-Appellant,*

v.

**UNITED STATES AND DEPARTMENT OF STATE,**
*Defendants-Appellees.*

---

2010-1066

---

Appeal from the United States District Court for the Northern District of California in Case No. 07-CV-4040, Judge Maxine M. Chesney.

---

NEWMAN, *Circuit Judge*, dissenting.

Ms. Chattler requested the expedited passport service of the Department of State, whereby for a fee of $60.00 the passport will be processed within three business days after receipt of the request. This expedited processing is offered on the passport application form; the Regulations define expedited processing as follows:

> 22 C.F.R. § 51.66. [Expedited processing is] processing within 3-business days commencing when the application reaches a Passport Agency or, if the application is already with a Passport Agency, com-

mencing when the request for expedited processing is approved.

The Regulations state that the fee will be refunded if the expedited processing is not provided within the three business days:

> 22 C.F.R. § 51.63. The passport expedite fee will be refunded if the Passport Agency does not provide the requested expedited processing as defined in 51.66.

In the accompanying Federal Register Notice, the State Department explained:

> 59 F.R. 48998. There will be situations in which expedited passport processing cannot be completed within three days. . . . The Department expects that these situations will be very rare. In such circumstances, the applicant will be notified and the fee will be refunded.

Fee for Expedited Passport Processing (Sept. 26, 1994).

Ms. Chattler's passport was not processed within three business days, or within the fifteen days that the State Department allocates to include mail and receipt time. Nor was the $60.00 expedite fee refunded. Her passport was not processed for six weeks, requiring her to make a personal visit to the San Francisco Passport Office, where she obtained the passport a day before her scheduled departure. The fee was never refunded.

At the argument of this appeal, counsel for the government agreed that the $60.00 refund is owed to Ms. Chattler and has not been paid, and stated that it will not be paid unless Ms. Chattler writes a letter to the Department of

State requesting the refund "with particulars." Both sides have dug in, Ms. Chattler refusing to write another letter, the government refusing to refund the $60.00.

The record suggests that more is at stake than petulance. The discovery record shows extensive discussion within the State Department of its use of these fees for other purposes, with particular mention of information technology, for the expedite fees are not required to be turned over to the Treasury. The amounts are not negligible. The appellant's brief contains the following chart:

| Fiscal Year | Expedited Requests | Expedited Service Not Received | Refunds Issued | % of Class Members Who Have Not Received Refunds |
|---|---|---|---|---|
| 2004 | 2,019,607 | 541,749 | 6,414 | 98.82% |
| 2005 | 2,303,623 | 788,889 | 6,843 | 99.13% |
| 2006 | 2,925,518 | 633,155 | 9,577 | 98.49% |
| 2007 | 5,910,135 | 3,358,725 | 8,546 | 99.75% |

(Appx. Vol.III:1520, 1561-62, 1568; (Def.'s Counterstatement of Undisputed Material Facts).[1]

---

[1] The State Department did not track refunds of the expedite fee separately from other refunds until June 2007, and these numbers are explained to include refunds in addition to refunds of expedite fees (e.g., refunds of passport fees on a no-fee application). In addition, some expedite requests were not eligible for a refund because the requester was not required to pay the fee. (*See* Vol.III:1561-62, 1568.)

At $60.00 for each expedite request, the arithmetic is powerful. The parties dispute whether the adoption of the procedure requiring a special request "with particulars" was intended to burden the refund process, or to simplify internal processing. However, the published Regulation requires both notice to the applicant and refund to the applicant, neither of which appears to be routinely given when the expedited service is not provided.

As the Court explained in *Christensen v. Harris County*, 529 U.S. 576, 588 (2000), it is inappropriate for "the agency, under the guise of interpreting a regulation, to create de facto a new regulation." This unannounced new "policy" "effect[ed] a change in existing law or policy [and] affect[ed] individual rights and obligation," *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998), and was improperly engrafted on the Regulation. The original intention that the refund would be routinely made if the expedited service failed, without additional formalities, is apparent from the Regulation, as Ms. Chattler points out, citing other regulations that are explicit as to refund request procedures. *E.g.*, 38 C.F.R. § 21.5064(b)(3)(ii) (Department of Veterans Affairs) ("The Department of Veterans Affairs shall make the refund only if the individual requests it."); 43 C.F.R. § 1823.12(b) (Department of the Interior) ("If you believe you are due a refund, you may request it from the BLM office where you previously submitted your payment."); 37 C.F.R. § 1.296 (Patent and Trademark Office) ("The request to withdraw may also include a request for a refund of any amount paid in excess of the application filing fee."); 10 C.F.R. § 205.283(a) (Department of Energy) ("Any person entitled to a refund pursuant to a final Decision and Order . . . may file an Application for Refund."); 14 C.F.R. §

(Def.'s Resp. to Pl.'s First Set of Special Interrogs., Interrog. No. 8.).

389.27(b) (Department of Transportation) ("Any person may file an application for refund of a fee paid since April 28, 1977, on the grounds that such fee exceeded the Board's cost in providing the service.")  No such provision exists in the State Department Regulations for expedited passport processing.

My colleagues on this panel offer an elaborate analysis of regulatory and contractual abstraction, but no authority ratifies the procedure of a government offer of a fee-based service, where the fee is paid and accepted, the service is refused, and refund is denied despite the explicit promise of a refund in the offer.

The court today holds that there is no juridical path by which Ms. Chattler can obtain review of this government action concerning her unrefunded fee.  That ruling is incorrect.  The statute under which this action was brought, 28 U.S.C. 1346(a)(2), establishes jurisdiction of claims against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .".  Whether this claim is perceived as relating to a regulation or a contract, jurisdiction is provided.  Whether liability may be found on particular facts does not determine whether there is Tucker Act jurisdiction of the claim.  See *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1244 (2010) (distinguishing subject matter jurisdiction from the claim for relief).

Ms. Chattler states that she is bringing a contract claim, citing the contract principles of offer, acceptance, and consideration.  Restatement (Second) of Contracts § 24 (1981).  In *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607 (2000), the Court explained that "[w]hen the United States enters into contract rela-

tions, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *See also Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) (when the United States "does business with its citizens, it does so much as a party never cloaked with immunity."). As in *National By-Products, Inc. v. United States*, 405 F.2d 1256, 1264 (Ct. Cl. 1969), the government's offer of expedited passport service was made "in the form of an undertaking rather than a mere prediction or statement of opinion." It is not disputed that this undertaking failed, and that, despite this litigation, no refund has been made.

Entitlement is not disputed. The continuation of this litigation is not easy to support. In apparent justification of its failure even to tender Ms. Chattler's refund, the government hints that she is seeking to bring a derivative action, as if this were somehow unethical. The question, however, is not the bona fides of motivation, but the merits of the cause. *See Ash v. GAF Corp.*, 723 F.2d 1090, 1095 (3d Cir. 1983) ("Where a plaintiff has a true cause of action, his motivation in filing suit is irrelevant"). From the court's ruling that Ms. Chattler has no judicial recourse for recovery of her $60.00 fee, I respectfully dissent.