**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1937**

THE ELECTRICAL WELFARE TRUST FUND, on behalf of itself and all others similarly situated,

      Plaintiff – Appellant,

  v.

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; ERIC HARGAN, in his official capacity as the Secretary of the United States Department of Health & Human Services,

      Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:16-cv-02186-DKC)

Argued: September 25, 2018                    Decided: October 23, 2018

Before WILKINSON and AGEE, Circuit Judges, and James P. JONES, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Agee and Judge Jones joined.

**ARGUED:** Joseph H. Meltzer, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania, for Appellant. Karen Schoen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Melissa L. Troutner, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania;

William P. Dale, MCCHESNEY & DALE, P.C., Bowie, Maryland, for Appellant. Chad A. Readler, Principal Deputy Assistant Attorney General, Alisa B. Klein, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Stephen M. Schenning, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees.

WILKINSON, Circuit Judge:

The Electrical Welfare Trust Fund ("the Fund") sued under the Tax Refund Statute, 28 U.S.C. § 1346(a)(1) (2012), to recover more than $1 million paid to the Department of Health and Human Services ("HHS") as part of the Transitional Reinsurance Program of the Patient Protection and Affordable Care Act of 2010. The district court dismissed for lack of subject matter jurisdiction, holding that because the payment was not a tax, exclusive jurisdiction for a suit for repayment lies with the Court of Federal Claims. The Fund challenges that ruling on appeal, and we now affirm.

I.

The Fund is a self-administered, self-insured employee health and welfare benefit plan created under a collective bargaining agreement. The Patient Protection and Affordable Care Act of 2010 ("ACA") reformed several features of the health insurance industry, which collectively led to more high-risk individuals entering the insurance market. The ACA therefore included a Transitional Reinsurance Program to stabilize the markets by requiring payments from "health insurance issuers, and third party administrators on behalf of group health plans ...." 42 U.S.C. § 18061(b)(1)(A). These payments would be collected and then reallocated to insurers who covered the new high-risk individuals. The ACA authorized the HHS Secretary to promulgate regulations defining who would pay into the Transitional Reinsurance Program. *See* 42 U.S.C. § 18041(a)(1)(C). The initial regulation required entities like the Fund to pay, but later amendments excluded them.

3

The Fund thus paid into the Transitional Reinsurance Program for 2014, but not thereafter, and in June of 2016 filed suit in the United States District Court for the District of Maryland under 28 U.S.C. § 1346(a)(1), seeking a refund of its 2014 payment on the grounds that the initial regulation's classification was an impermissible interpretation of the statute. The Fund argued that the payment was a tax under § 1346(a)(1) because it met a multi-factor test articulated in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996). The district court noted, however, that under *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012), the Supreme Court's statutory test was controlling. Because the Fund's payment was described as a "payment" or "contribution" in the ACA, *see* 42 U.S.C. § 18061(b), it was not a tax. That conclusion meant that the district court lacked subject matter jurisdiction. The district court thus granted the government's Fed. R. Civ. Pro. 12(b)(1) motion to dismiss without prejudice, leaving the opportunity for the Fund to seek a refund in the Court of Federal Claims under 28 U.S.C. § 1491. The Fund then separately filed an action with the Court of Federal Claims while also bringing this appeal.

II.

Section 1346 grants district courts jurisdiction concurrent with the Court of Federal Claims for civil actions seeking a refund from the United States of an "internal-revenue tax." 28 U.S.C. § 1346(a)(1). The Fund claims on appeal that its payment to the Department of Health and Human Services was an "internal-revenue tax" under § 1346, allowing it to proceed in federal district court. The statute's text is simply fatal to this

4

claim. To see why, one must understand how § 1346 intersects with other relevant statutes.

Suits seeking money payments from the federal government invoke the Tucker Act, which waives federal sovereign immunity for claims greater than $10,000 so long as the litigant proceeds in the Court of Federal Claims. *See* 28 U.S.C. § 1491. Another route exists for tax claims. Section 1346 creates a narrow exception that allows taxpayers to seek a refund in their home district rather than in Washington D.C. However, this jurisdictional grant comes with limitations.

Section 1346 is part of the broader scheme of tax administration. This scheme is responsive to the unique governmental interests with respect to tax revenue. When a taxpayer challenges a collection, for instance, the Anti–Injunction Act, 26 U.S.C. § 7421(a), requires that he first pay the tax and then seek a refund, preventing disruption in revenue collection. In seeking this refund, a separate law, the Claim-for-Refund provision, 26 U.S.C. § 7422(a), requires that taxpayers first seek relief from the Treasury Department. Only after these twin hurdles of payment and administrative exhaustion are surmounted does § 1346 come into play, allowing a civil suit in the taxpayer's local federal district court. The interlocking structure created by these statutes—the Anti–Injunction Act, Claim-for-Refund statute, and § 1346—works together to create an integrated system of administration, distinct from other claims for monetary relief.

When statutes function as parts of a greater whole, our canons of construction require reading them together, *in pari materia*. Here, that requirement is heightened because § 1346 uses the very same operative phrase as the Claim-for-Refund statute. That

5

phrase is the one at issue in this litigation: "internal revenue tax." Section 1346(a) reads

as follows:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; 28 U.S.C. § 1346(a).

The Supreme Court has instructed that "[d]espite its spacious terms, § 1346(a)(1)

must be read in conformity with other statutory provisions which qualify a taxpayer's

right to bring a refund suit …." *United States v. Dalm*, 494 U.S. 596, 601 (1990). The

Claim-for-Refund statute, § 7422(a), is just such a qualification, and, as the Supreme

Court noted, it "track[s] the language of[] § 1346(a)(1)." *Id.* Section 7422(a) reads as

follows:

> (a) No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof. 26 U.S.C. § 7422(a).

Both provisions above come from the Revenue Act of 1921, and their textual

connection compels the same construction. The "normal rule of statutory construction" is

that "identical words used in different parts of the same act are intended to have the same

meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995). Beyond that basic

principle, the Supreme Court long ago observed that the "essential language" of

6

§ 1346(a)(1) "seems to have been copied from … the predecessor of the present claim-for-refund statute [§ 7422]" and that "[t]he meaning that has been ascribed to this language in the claim-for-refund statute provides the key to what Congress intended when it used that language in the jurisdictional provision." *Flora v. United States*, 357 U.S. 63, 65 (1958), *on reh'g*, 362 U.S. 145 (1960).

Reading both *in pari materia*, a taxpayer must first seek a refund from the "Secretary" before commencing suit in district court. The "Secretary," of course, means the Secretary of the Treasury. That is the Department of which the Internal Revenue Service is a part. It would make little sense for § 7422 to require exhaustion with the IRS as a precondition to seeking a refund from HHS, another agency. Since the words in § 1346 are the same as those in § 7422, an "internal revenue tax" must be one for which requesting a refund from the "Secretary" is sensible. The ineluctable conclusion is that internal revenue taxes are those collected by the IRS, under the authority of the Internal Revenue Code. *Accord Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1134 (10th Cir. 2011). That conclusion disposes of this case: because the payment here was made not to the Treasury, but to HHS under the Transitional Reinsurance Plan, it was not an internal revenue tax.

*Nat'l Fed'n of Indep. Bus. v. Sebelius* further undermines the Fund's view. While the Fund seeks to characterize *Sebelius* as "a results-driven analysis by a Court intent on upholding the constitutionality of the ACA," Reply Br. at 13, it is neither the Fund's prerogative nor ours to speak of the Court's decisions in such derisive terms. While *Sebelius* indicates "that Congress cannot change whether an exaction is a tax or a penalty

7

for *constitutional* purposes simply by describing it as one or the other," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012), it makes clear that Congress's denominations do obviously matter in issues of statutory instruction. *Id.* ("The Anti–Injunction Act and the Affordable Care Act, however, are creatures of Congress's own creation. How they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text."). The Fund concedes that Congress labeled its assessment as a "contribution" in the statutory text, 42 U.S.C. § 18061(b), but it wishes to disregard that label in the jurisdictional inquiry before us. That it cannot do. The two statutes whose interplay is critical here are the ACA and the jurisdictional provision in § 1346(a)(1). The Fund cannot alter Congress's language or meaning in the ACA for the purpose of bringing a civil action under § 1346(a)(1) in federal district court.[*]

The Fund's position is limitless. There are any number of government fees and non-tax exactions made by government agencies in return for services or benefits. *E.g.*, *Chattler v. United States*, 632 F.3d 1324, 1326 (Fed. Cir. 2011) (suit for a refund of an expedited service fee after plaintiff's passport application was not processed within three days); *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 103 (2017) (suit for refund of class's mining claim maintenance fees paid to the Bureau of Land

---

[*] *In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996), on which the Fund relies, is of no help to its position. It bears mentioning that the Coal Act premiums at issue in *Leckie* were enacted as an amendment to the Internal Revenue Code of 1986, codified in Title 26, and administered by the Secretary of the Treasury, *see Leckie*, 99 F.3d at 583 & n.12, and thus the case is of no assistance to the Fund's position. And, of course, in the event of any conflict between the mode of analysis there and that employed in *Sebelius*, the Supreme Court's instruction in *Sebelius* would control.

8

Management); *see also* 8 U.S.C. § 1356(d) (authorizing the Attorney General to charge each traveler $7 to defray immigration inspection costs); 15 U.S.C. § 78ee(a) (authorizing the Securities and Exchange Commission to "collect transaction fees and assessments … to recover the costs to the Government of the annual appropriation to the Commission"); 21 U.S.C. § 136a(a) (authorizing the Secretary of Agriculture to prescribe fees to defray quarantine and inspection costs); 42 U.S.C. § 2214 (authorizing the Nuclear Regulatory Commission to assess and collect charges and fees); 31 U.S.C. § 9701(a) ("It is the sense of Congress that each service or thing of value provided by an agency … is to be self-sustaining to the extent possible.").

If every such exaction were to be regarded as a tax, the district courts would be swamped with lawsuits. In recognition of that problem, Congress has given the Court of Federal Claims jurisdiction over claims contesting allegedly illegal exactions "for recovery of monies that the government has required to be paid contrary to law." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). An illegal exaction claim is one in which the plaintiff alleges "the value sued for was improperly paid, exacted, or taken from [him] in contravention of the Constitution, a statute, or a regulation" and "the Government has the citizen's money in its pocket …." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007-08 (Ct. Cl. 1967).

The Fund has filed in the Court of Federal Claims a suit contesting HHS's collection of a reinsurance payment under the ACA. The Court of Federal Claims has exclusive jurisdiction over the Fund's action. The Fund argues, however, that the test is purely one of functionality, in which courts are to inquire whether a particular

9

assessment, collection, exaction, or fee does or does not "function" like a tax. The Fund's view would create nothing but confusion in an area in which ease of application is important. The Supreme Court has noted "the need for judicial administration of a jurisdictional statute to remain as simple as possible." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Fortunately, there is a simple answer here. For the reasons noted above, § 1346(a)(1) applies only to taxes and other sums collected by the Internal Revenue Service under the Internal Revenue Code. The judgment of the trial court is

*AFFIRMED*.